24   *B.F. Goodrich v. United States Filter Corp.*

Goodrich did not pay taxes on Arrowhead's accounts receivable. This issue is preserved for trial. The case is REMANDED for further proceedings not inconsistent with this opinion.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0088P (6th Cir.)
File Name: 01a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

B.F. GOODRICH COMPANY,
    *Plaintiff-Appellant,*

    *v.*

UNITED STATES FILTER
CORPORATION,
    *Defendant-Appellee.*

No. 99-4353

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 97-03157—Dan A. Polster, District Judge.

Argued: November 1, 2000

Decided and Filed: March 29, 2001

Before: KEITH, BOGGS, and COLE, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Steven C. Bennett, JONES, DAY, REAVIS & POGUE, New York, New York, for Appellant. Thomas G. Rohback, LEBOEUF, LAMB, GREENE & MacRAE, Hartford, Connecticut, for Appellee. **ON BRIEF:** Steven C. Bennett, JONES, DAY, REAVIS & POGUE, New York, New York, for Appellant. Thomas G. Rohback, Peter J.

Vodola, LEBOEUF, LAMB, GREENE & MacRAE, Hartford, Connecticut, for Appellee.

─────────────

**OPINION**

─────────────

   BOGGS, Circuit Judge.   Plaintiff B.F. Goodrich Co. ("Goodrich") appeals the district court's decision granting summary judgment in favor of defendant United States Filter Corp. ("Filter") upon cross-motions for summary judgment in a diversity action for breach of a stock purchase agreement governed by New York law.  For the following reasons, we reverse and remand for trial.

I

   This case concerns competing interpretations of a single provision of a Stock Purchase Agreement (the "Agreement"). Goodrich and Filter entered into the Agreement on February 27, 1995.  Pursuant to the Agreement, Goodrich conveyed to Filter 100% of the issued and outstanding shares of common stock of Arrowhead Industrial Water, Inc. ("Arrowhead" or "AIW"), then a Goodrich subsidiary. Section 8.2(g) of the Agreement provides that:

   Buyer [Filter] covenants to compensate Seller [Goodrich] for any Income Tax paid by Seller with respect to income accrued and included in Seller's taxable income, but not paid to Seller prior to Closing.[1]

─────────────

   [1]In addition to Section 8.2(g), several other provisions of the Agreement are relevant to this case.  Section 8.1, entitled Tax Definitions, defines "Income Tax" as:

   (i) any net income, alternative or add-on minimum tax together with any interest, penalty, addition to or additional amount imposed by any Taxing Authority and (ii) any liability of AIW or Seller for the payment of any amounts of the type described

We refer once again to Section 8.2(g), which states:

   Buyer covenants to compensate Seller for any Income Tax paid by Seller with respect to income accrued and included in Seller's taxable income, but not paid to Seller prior to Closing.

In addition, we note that in Section 8.1, income tax is contemplated as a tax on any "net income." Reading Section 8.2(g) by itself and in light of Section 8.1 and the remainder of the Agreement, we conclude that the contract is ambiguous as to whether the determination of income taxes paid on Arrowhead's accounts receivable should be based on Goodrich's net income or Arrowhead's net income.  *See Space Imaging*, 38 F. Supp. 2d at 334.

   The external evidence does not resolve this ambiguity.  *See ibid.*  The district court ruled that Goodrich did not present evidence that it paid income tax on the accounts receivable, but Goodrich has provided evidence that the accounts receivable existed and were included in Goodrich's net income, and that Goodrich paid tax on this net income.  This could mean that Goodrich did indeed pay taxes on Arrowhead's accounts receivable.  Filter, however, presents evidence that Arrowhead operated at a loss, supporting its position that Goodrich did not pay taxes on Arrowhead's accounts receivable.  As a result, this issue is preserved for trial, as there is a genuine issue of material fact as to whether Goodrich paid income taxes on Arrowhead's accounts receivable.

VI

   For the foregoing reasons, we hold that the district court's decision granting summary judgment in favor of Filter was in error.  Therefore, the district court's judgment in favor of Filter is REVERSED.  The case is remanded to the district court for trial on the issue of the intent of the parties in including Section 8.2(g) in their Stock Purchase Agreement. We further note that the district court erred in finding that

Federal Taxes stating that Arrowhead had no net taxable income for 1994 or the first quarter of 1995. In addition, Filter relies upon the testimony of Goodrich's tax advisor, who stated that Arrowhead operated at a loss. Filter argues that Goodrich only offered proof that it paid taxes on Goodrich's own corporate-wide net income, not that Goodrich paid taxes on Arrowhead accounts receivable.

B

The resolution of this issue depends on whether Section 8.2(g) should be interpreted as referring to net income of Goodrich as a whole, which would include Arrowhead's accounts receivable, as Goodrich argues, or net income of Arrowhead by itself, as Filter argues. According to Filter's interpretation, since Arrowhead operated at a loss, it did not have net income, but instead generated a tax credit for Goodrich. As a result, Filter argues that Goodrich did not actually pay income taxes on Arrowhead's accounts receivable.

Goodrich asserts that it is unfair for Filter to get the benefit of the income from Arrowhead's accounts receivable, while Goodrich pays the taxes on it. Filter argues that it is unfair for Filter to pay Goodrich for taxes on Arrowhead's accounts receivable when Goodrich also gets the benefit of a tax credit as a result of Arrowhead's other expenses. Goodrich responds that if income from Arrowhead's accounts receivable had not been recognized, Goodrich would have recorded less income on its consolidated tax return and would have paid less taxes. In other words, as the subsidiary's income from accounts receivable increases, the subsidiary's net losses decrease, the parents's tax credit decreases, and the parent's income increases, increasing the parent's tax liability. Therefore, if Arrowhead did not have any income from accounts receivable, Arrowhead's net losses would have been even greater, generating an even greater tax credit for Goodrich, and reducing Goodrich's net income and corresponding taxes.

After the closing, Goodrich demanded reimbursement of certain tax payments from Filter, pursuant to Section 8.2 of the Agreement, and Filter refused. This simple description, however, belies a much more complex chain of events.

Both Goodrich and Filter had experience in negotiating similar transactions when they entered into negotiations regarding the Agreement. Goodrich drafted Section 8.2(g) of the Agreement. Although four versions of the Agreement were drafted, Filter's representatives never discussed or proposed any modification to Section 8.2(g) and it remained unchanged throughout the course of negotiations over the Agreement.

Both Goodrich's principal negotiator, Steven Esakov, and its principal tax advisor, George Sherwood, testified that Section 8.2(g) was intended to deal with the problem of taxes on accrued but unpaid income, such as receivables. The Agreement called for the buyer to acquire Arrowhead on a going-forward basis. Thus, any cash received by Arrowhead after the closing would belong to the buyer -- Filter. Both Arrowhead and Goodrich were consolidated, accrual

---

in (i) as a result of being a member of an affiliated, consolidated, combined or unitary group or as a result of any obligations under any arrangements or agreements with respect to any amounts of the type described in clause (i).

Section 11.1 describes *Indemnification.* Section 11.1(b) provides for *Tax Indemnification by Seller* and subsection (i) states:

Seller hereby agrees to indemnify, defend and hold Buyer harmless against and agrees to hold it harmless from any and all Income Taxes of AIW for any Pre-Closing Tax Periods.

Section 1.3 identifies the Seller's *Retained Liabilities* and subsection (a) provides that Goodrich shall retain liability for:

Income Taxes (as defined in Section 8.1 hereof), resulting from the sale of the Common Stock and the treatment of the transaction contemplated in Section 8.2 hereunder.

taxpayers at the time of the sale, however. As a result, Goodrich included any income accrued by Arrowhead prior to closing in Goodrich's consolidated tax returns, even though Goodrich would never receive the cash pertaining to that accrued income since it would be received by Arrowhead after Filter's purchase of Arrowhead. Therefore, Goodrich claims it included Section 8.2(g) in the Agreement because, according to Sherwood, it was "fair" to ask Filter to "pay the taxes that came as a result of income that Goodrich had accrued (as part of its consolidated tax returns) but for which it had not received cash." Goodrich included the section in the Agreement after such a provision had been proposed by the seller in another agreement in which Goodrich was the buyer. Goodrich assumed that Filter understood Goodrich's interpretation of Section 8.2(g) and anticipated some discussion of the section during negotiations or questions from Filter if Filter did not understand the provision.

The transaction closed on April 28, 1995. After closing, an issue remained concerning a purchase price adjustment, resulting in implementation of an audit process. The issue was resolved over the course of nine months and with four amendments to the Agreement. Section 8.2(g) was not discussed by the parties during this process.

In mid-1996, Goodrich was in the process of finalizing its tax returns for 1995 (including tax returns for Arrowhead, a member of its consolidated group for the first part of 1995). On July 11, 1996, Sherwood, Goodrich's Vice President of Tax Administration, informed Kevin Spence, Filter's Vice President and Chief Financial Officer, that in accordance with Section 8.2(g) of the Agreement, Filter was "required to compensate" Goodrich for "any Income Tax paid by Seller with respect to income accrued and included in Seller's taxable income, but not paid to Seller prior to Closing." The letter estimated that Filter owed Goodrich $2.9 million on account of tax on "accrued but uncollected income at April 30, 1995 (the accounts receivable)."

that Section 8.2(g) refers to accrued income "included in Seller's taxable income." In addition, Goodrich notes that Section 8.1 defines "Income Tax" to include tax liability of Arrowhead or Goodrich "as a result of being a member of an affiliated, consolidated, combined or unitary group." Therefore, Goodrich argues that since Arrowhead and Goodrich filed a consolidated income tax return and since the reference in Section 8.2(g) was to the amount that Goodrich paid, the relevant net income was not that of Arrowhead, but that of Goodrich as a whole. Goodrich noted that it presented evidence that it had net income in 1995 and paid tax on that income.

Goodrich also contends that it presented evidence that Section 8.2(g) of the Agreement was intentionally drafted to cover "income accrued" rather than "income less any matching expenses." Goodrich states that while it would have to report the income relating to Arrowhead's accounts receivable that was unpaid as of closing, Arrowhead's accounts payable could not be considered as offsetting expenses. Goodrich argues that these accounts payable were principally related to the purchase of long-term assets, which were depreciated over time. As a result, Goodrich argues, they were to be taken as depreciation deductions after closing by Filter, rather than Goodrich. In addition, Goodrich's tax advisor testified that it was impossible to "match" Arrowhead's accrued income against any conceivably associated expenses and that Filter was aware of the difficulty of matching.

Filter notes that Goodrich's principal negotiator testified that he did not know if Goodrich paid tax on Arrowhead income. In addition, Filter argues that Goodrich's tax records failed to reveal any entry for income tax paid on Arrowhead accounts receivable. Instead, Filter asserts that Goodrich's internal tax records indicate that there was no taxable income from Arrowhead, but rather, that Arrowhead operated at a loss and generated a tax credit for Goodrich. Filter points to a statement from Goodrich's Director of International and

V

The second basis upon which the district court granted Filter's motion for summary judgment was that Goodrich produced "no evidence" that it paid the claimed $2.9 million in taxes on Arrowhead's accounts receivable during the first quarter of 1995. Reviewing the evidence presented, we conclude that Goodrich did present sufficient evidence to create a genuine issue of material fact as to whether it paid the claimed $2.9 million in taxes on Arrowhead's accounts receivable. Before discussing our conclusion, it is first necessary for us to review the district court's findings and the evidence presented by Goodrich and Filter as to this issue.

A

The district court noted that Goodrich claimed an income tax credit for Arrowhead's losses during the first quarter of 1995. The court concluded from this that Goodrich did not pay taxes on Arrowhead's accounts receivable. The district court stressed that during the first quarter of 1995, Arrowhead operated at a loss of over $1.9 million and that, therefore, Arrowhead had no taxable or net income for the pre-closing period.

Goodrich argues that it presented extensive evidence to support its claim that it paid taxes on Arrowhead's accounts receivable. Goodrich notes that it presented an invoice to Filter detailing the basis for its claim and that Goodrich's tax advisor presented testimony that the invoice was "entirely accurate." Furthermore, Goodrich argues that Filter's response to the invoice was not to question the amount owed, but to contest whether Section 8.2(g) applied to accounts receivable. In addition, Goodrich argues that Filter submitted no evidence contradicting Goodrich's calculation on its motion for summary judgment.

Next, Goodrich asserts that the district court's conclusion that Arrowhead had no "net income" in the first quarter of 1995 does not affect Goodrich's argument. Goodrich notes

On October 15, 1996, Sherwood sent a second letter to Spence. This time Goodrich included an invoice representing "the billing for the federal and state income tax paid" by Goodrich. Goodrich claimed that such "income accrued" amounted to roughly $7 million dollars in Arrowhead accounts receivable that Goodrich included in its gross income from 1995, resulting in payment of $2,943,942 in income tax.

Filter returned correspondence denying that it owed any money to Goodrich pursuant to Section 8.2(g) of the Agreement. Filter interprets Section 8.2(g) as pertaining not to accounts receivable, but to money that Arrowhead owed Goodrich for inter-company services rendered prior to closing of the sale. The first time Filter offered this interpretation of Section 8.2(g) was during Spence's deposition in this case. The interpretation was not raised in Filter's letters responding to Goodrich's correspondence or in Filter's Answer to the Complaint, all of which stated other reasons for Filter's refusal to pay.

The term "accounts receivable" is not included in Section 8.2(g) and was never used by Goodrich as a term in the drafting of Section 8.2(g). In addition, Section 8.2(g) does not mention Arrowhead. Other sections of the Agreement placed tax obligations on Goodrich, in particular, Section 1.3(a) and Section 11.1(b)(i). Goodrich's Sherwood asserted that Section 8.2(g) was a "carve out" from Goodrich's retention of all tax liabilities, but Filter notes that no "carve-out" language was used in Section 8.2(g), or in any of the other relevant sections concerning tax liabilities.

Filter maintains that Goodrich's own records showed that Arrowhead had operated at a loss and generated no taxable income, but nevertheless Goodrich demanded an amount equal to roughly one-fifth of Goodrich's entire corporate tax payment, claiming that it paid this amount as income taxes solely on the accounts receivable income from Arrowhead.

## II

Goodrich filed its complaint on December 4, 1997. On February 4, 1998, a Case Management Plan was entered, placing the case on an expedited track with discovery to be completed by May 6, 1998. Counsel were directed to confer and prepare "written stipulations" as to "uncontested facts" to be considered on cross-motions for summary judgment. If the case could not be brought to a "prompt conclusion" on summary judgment a trial was to be conducted.

The parties submitted a sixty-five-page "Joint Statement of Undisputed Material Facts" (the "Joint Statement"). The Joint Statement was divided into two parts: one highlighting facts in Filter's favor and the other highlighting facts in Goodrich's favor. The parties stated that they had "different views as to which undisputed facts are material." In addition, the parties planned for the possibility that summary judgment might be denied, noting that supplementation of the Joint Statement might be required "for purposes of trial." On the basis of the Joint Statement, both parties filed motions for summary judgment. On January 25, 1999, the district court permitted both parties to supplement the record. On April 7, 1999, the parties conducted the deposition of George K. Sherwood, Goodrich's Vice President of Tax Administration, and filed supplemental memoranda in support of their cross-motions for summary judgment. On September 30, 1999, the district court granted Filter's motion for summary judgment and denied Goodrich's cross-motion.

In granting Filter's summary judgment motion, the district court relied on two independent bases for its decision. First, the court found that, as a matter of contract interpretation, Section 8.2(g) could not have the meaning urged by Goodrich when considered in the context of the contract as a whole. Specifically, the court noted that Goodrich retains all pre-closing tax liability under Section 11.1(b) of the Agreement and that Section 8.2(g) does not refer to accounts receivable and does not use "carve-out" language. The court also noted

pay the taxes on this income. This seeming incongruity supports Goodrich's argument that the intent of the parties was to place the tax liability on the party receiving the income from the accounts receivable. In addition, Goodrich notes that when it was faced with a similar provision in another transaction, its tax advisors immediately recognized that the provision addressed taxes on receivables. Finally, Goodrich notes that Filter is a large and sophisticated corporation, with experience in similar transactions, that it conducted extensive due diligence on this transaction, including due diligence on the tax and receivables issues, and that it was actively involved in the drafting process.

At the same time, however, Filter's evidence indicates that Section 8.2(g) was never discussed between the parties during negotiation of the Agreement or its subsequent amendments. There is no evidence of Filter's intent as to the meaning of Section 8.2(g) during the course of negotiations. Filter presents evidence that it had a different interpretation of Section 8.2(g) than that offered by Goodrich. This interpretation was never raised to Goodrich during the course of negotiations, however, but only raised after Goodrich requested reimbursement for payment of income taxes related to Arrowhead's accounts receivable.

Neither party presents sufficient extrinsic evidence of intent to support the proposition that its interpretation of the Agreement should be adopted as a matter of law at summary judgment. Both parties present sufficient evidence to create genuine issues of material fact regarding the parties' interpretation of Section 8.2(g) and their intent in including Section 8.2(g) in the Agreement.

This is one of those rare cases where, even in light of cross-motions for summary judgment and a Joint Statement of Undisputed Material Facts, genuine issues of material fact remain, both motions for summary judgment should be denied, and the case should proceed to trial. *See Taft Broad. Co.*, 929 F.2d at 248.

C

Since the language of Section 8.2(g) is ambiguous when considered by itself and in terms of the Agreement as a whole, we must examine relevant extrinsic evidence in order to ascertain the parties' intent. *See Space Imaging*, 38 F. Supp. 2d at 334. On a summary judgment motion, a court is to draw all reasonable inferences on factual issues in favor of the non-movant. *See National Enterprises,* 114 F.3d at 563. Although the parties filed cross-motions for summary judgment, on appeal we are examining only the district court's decision granting Filter's motion for summary judgment. Therefore, we must draw all reasonable inferences on factual issues in favor of Goodrich. If the extrinsic evidence creates no genuine issues of material fact and permits interpretation of the Agreement as a matter of law, then summary judgment is appropriate. *See Space Imaging*, 38 F. Supp. 2d at 334. Otherwise, summary judgment is not appropriate and the case should proceed to trial.

In the face of cross-motions for summary judgment, the extrinsic evidence in this case creates genuine issues of material fact and does not permit interpretation of the agreement as a matter of law. Both parties have provided extrinsic evidence supporting their interpretation of Section 8.2(g). Goodrich offers an array of evidence to support its contention that Filter knew or should have known of Goodrich's interpretation of Section 8.2(g) of the Agreement. Goodrich's chief negotiator and chief tax advisor testified that Section 8.2(g) was intended to deal principally with accrued, but unpaid, receivables. Goodrich also presented evidence that Arrowhead's receivables were an important part of the Agreement. The Offering Memorandum for the sale disclosed that Arrowhead had $6.8 million in receivables outstanding at the time of negotiations. If Section 8.2(g) was *not* intended to deal with these accounts receivable, then Arrowhead would provide goods or services while owned by Goodrich, Filter would receive the income for these goods or services after acquiring Arrowhead, and Goodrich would still

that "carve-out" language was used in other portions of the Agreement. Second, the court found that Goodrich did not offer proof that it actually paid income taxes on Arrowhead's accounts receivable. The district court found that Arrowhead operated at a loss during the first quarter of 1995, that it had no taxable or net income during the pre-closing period, and that Arrowhead's loss resulted in a tax credit for Goodrich.

III

A

This court reviews a district court's grant of summary judgment de novo, using the same standard employed by the district court. *See National Enterprises, Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997) (citing *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993)); *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *See National Enterprises*, 114 F.3d at 563. To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *See Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 342 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

B

The standard of review poses unique issues in this case because the parties filed cross-motions for summary

judgment.  Goodrich argues that the district court misapplied the summary judgment standard in granting Filter's motion for summary judgment.  Before addressing the merits of the case, we will discuss the issues presented by Goodrich regarding the district court's application of the summary judgment standard.  These issues shed light on the proper analysis a court should apply when faced with cross-motions for summary judgment in a case relating to a contract dispute.

On appeal, Goodrich submits only that it was improper for the district court to grant Filter's motion, *not* that the district court should have granted Goodrich's cross-motion.  Goodrich argues that the district court's decision should be reversed and that the dispute should be submitted to a jury on the basis that there are genuine issues of material fact.

We have held that "[t]he fact that both parties make motions for summary judgment . . . does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948) (cited with approval in *Cherokee Ins. Co. v. E. W. Blanch Co.*, 66 F.3d 117, 122 n.4 (6th Cir. 1995)).  In *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 241 (6th Cir. 1991), this court reversed an order granting summary judgment on cross-motions for summary judgment and a "stipulated" factual record.  The court noted that, on cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* at 248. Differentiating between cross-motions for summary judgment and a trial on a stipulated record, the court stated that the filing of cross-motions for summary judgment "does not necessarily mean that the . . . court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Ibid.*  The court denied both motions for summary judgment, determining that it was possible to draw inferences in either direction. *Ibid.*

Section 8.2(g) is not a sufficient basis for ruling in favor of Filter.  The lack of such language only supports the conclusion that Section 8.2(g) is ambiguous.

Finally, the district court relied on the doctrine of contractual interpretation that when choosing between two plausible interpretations of a contract, it is preferable to choose the meaning that "operates against the party who supplies the words."  RESTATEMENT (SECOND) OF CONTRACTS § 206 (1981).  The court stated that Goodrich, as drafter of the section, could have avoided any problems in interpreting the contract by inserting specific language to give greater clarity to the section.  The RESTATEMENT (SECOND) OF CONTRACTS states, however, that the *contra proferentem* rule should be applied only "so long as other factors" relevant to interpretation are "not decisive[.]"  § 206 cmt. a (1981).  Under New York law, the rule is applied "only as a matter of last resort after all aids to construction have been employed without a satisfactory result." *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 674 (2d Cir. 1997).  The rule is "often invoked in cases of standardized contracts," or where "the drafting party has the stronger bargaining position," such that the rule is "hard to distinguish from a denial of effect to an unconscionable clause."  RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a (1981).  This is not such a case.  This case does not involve a standardized contract, nor was Goodrich in a stronger bargaining position.  Filter is a large and sophisticated company that has participated in many acquisitions.

Not only is Section 8.2(g) itself ambiguous, but it is ambiguous in light of the Agreement as a whole.  The language of the Agreement supports the interpretations of Section 8.2(g) presented by both Filter and Goodrich.  As a result, the district court erred in ruling that Goodrich's interpretation of Section 8.2(g) could not be supported by the Agreement.

general provision and a specific provision of a contract, the specific provision controls.").

Second, the district court stated that "[a]lthough Goodrich's interpretation of Section 8.2(g) is plausible, the clause itself is vague and unclear." The court noted that: (1) the Agreement does not define "income accrued;" (2) nothing in the Agreement would have notified Filter that "income accrued included accounts receivable;" and (3) Section 8.2(g) makes no reference to accounts receivable of Arrowhead. These arguments only support the conclusion that Section 8.2(g) is ambiguous and may lend itself to one or more meaning, for which external evidence as to the parties' intent may appropriately be considered. The arguments do not support the proposition that Filter should prevail as a matter of law. All inferences must be drawn in Goodrich's favor when considering Filter's summary judgment motion. The fact that Goodrich's interpretation of Section 8.2(g) is plausible supports Goodrich's argument that the clause relates to Filter reimbursing Goodrich for Goodrich's tax liability relating to Arrowhead's accounts receivable. When all inferences are drawn in Goodrich's favor, the facts relied upon by the district court were not sufficient for the district court to have found in favor of Filter at summary judgment.

Third, the district court stated that the parties could have included "carve-out" language that is used in other portions of the Agreement. Goodrich argues, however, that Sections 8.2(g) and 11.1(b) are physically and logically separated, so there was no need to include language carving out Section 8.2(g) from Section 11.1(b). Filter cites other sections that use carve-out language, suggesting that Goodrich should have used such language in Section 8.2(g). Goodrich responds that the sections cited by Filter are linked by proximity and topic to other sections, making carve-out language appropriate in those cases. In addition, Goodrich notes that there are other portions of the Agreement in which the parties do not use carve-out language when they conceivably could or should have used such language. The lack of carve-out language in

Goodrich argues that the district court improperly weighed the interpretations of the Agreement offered by Goodrich and Filter and chose one over the other, rather than applying the summary judgment standard to each interpretation to determine if, under either interpretation, no genuine issues of material fact existed. Specifically, Goodrich takes issue with the district court's statements that "Goodrich and Filter agree that summary judgment is appropriate" and "Goodrich hasn't carried its burden of proving their interpretation" of the Agreement. We will address Goodrich's arguments regarding each of these statements in turn.

1

With regard to the first issue, Goodrich contends that, contrary to the district court's statement, it did not agree that summary judgment was necessarily "appropriate." Goodrich notes that the Joint Statement of Undisputed Material Facts recognized that the parties disagreed as to what undisputed facts were material and indicated that a trial might be required to resolve the case. Filter points out, however, that there were no "facts" in dispute and that all the facts were "undisputed" by stipulation. Filter argues that genuine issues of material fact cannot be created simply on the basis that the parties may disagree as to which undisputed facts are material.

Goodrich's arguments are more persuasive. It was not necessary for the district court to resolve the case at summary judgment solely because the parties filed cross-motions for summary judgment and presented a Joint Statement of Undisputed Material Facts. When parties file cross-motions for summary judgment, "the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998). A trial court may conclude, when reviewing the undisputed material facts agreed upon by the

parties and drawing all inferences, in turn, for the non-moving party, that a genuine issue exists as to those material facts, in which case the court is not permitted to resolve the matter, but rather, must allow the case to proceed to trial.  *See ITCO Corp. v. Michelin Tire Corp., Commercial Div.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983).[2]  The district court in this case could have ruled, as it did, that one party sufficiently demonstrated that no genuine issue of material fact existed.  The court also could have ruled, however, that neither party met its burden of demonstrating that no genuine issue of material fact existed when all inferences were drawn, in turn, for the non-moving party, such that it would be proper for the case to go to trial.  Therefore, summary judgment was not necessarily appropriate solely because the parties filed cross-motions for summary judgment.[3]

---

[2]We note the similarities between this case and *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), in which the court faced cross-motions for summary judgment and remarked:

> The instant litigation is somewhat atypical because both parties clamor for summary judgment urging that the record presents no disputed issue of fact--as if trial is to be avoided like the plague. But, rather typical of such 'agreements' to end the case by summary judgment, this admirable harmony does not carry over to agreement on what the 'undisputed' facts are or the permissible inferences to be drawn from them.

Unlike in *American Manufacturers*, in this case the parties agree as to the "undisputed" facts.  Yet, this is not enough, by itself, to ensure resolution of the case at summary judgment.  Critically, the parties do *not* agree as to the permissible inferences to be drawn from these undisputed facts. Indeed, the parties declared in their Joint Statement of Undisputed Material Fact, that they had "different views as to which undisputed facts are material."  As a result, a genuine issue of material fact may still remain.

[3]It remains true that when a trial court is ruling on cross-motions for summary judgment in a nonjury case and the facts are fully developed at the hearing on the motions, "the court may proceed to decide the factual issues and render a judgment on the merits without any further delay if it

reimburse Goodrich for Goodrich's pre-closing tax liability on accrued income, such as accounts receivable, that would not be received by Arrowhead until after closing.  The court determined that while Section 8.2(g) may be ambiguous when considered on its own, it is not ambiguous when considered in light of the entire agreement.  The district court's reasoning is faulty on a number of grounds.

First, the district court noted that under New York law, when a court is presented with two conflicting interpretations of a clause in a contract it should look to find an interpretation that gives meaning to all terms of the contract and leaves no clause without meaning.  *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).  The district court noted that when Section 8.2(g) is read in light of the entire agreement, it conflicts with Section 11.1(b), which states that Goodrich has maintained all pre-closing tax liability.  Yet, by claiming that Section 11.1(b) addresses the issue of all pre-closing tax liability, the district court essentially renders Section 8.2(g) meaningless, yielding the result that the district court purportedly intended to avoid.

Filter's interpretation of Section 8.2(g) does not sufficiently resolve this question either.  Filter interprets Section 8.2(g) as pertaining to reimbursement of Goodrich for income taxes paid by Goodrich for services rendered by Goodrich to Arrowhead before closing.  Yet, according to the district court's ruling, Filter's interpretation would also be subsumed by Section 11.1(b), on the basis that Goodrich has maintained all pre-closing tax liability under that section.  Moreover, the district court's ruling runs contrary to the interpretative principle that specific language prevails over general language in a contract.  *See Tishman & Lipp, Inc. v. Delta Airlines*, 275 F. Supp. 471, 480 (S.D.N.Y. 1967) ("It is a familiar principle of legal construction that the specific provisions of a contract are to be given preference over the general provisions, and if there is a conflict between the two any reconciliation should give full effect to the more specific."); *Bank of Tokyo-Mitsubishi, Ltd. v. Kvaerner*, 671 N.Y.S.2d 905, 910 (N.Y. App. Div. 1998) ("[I]f there is an inconsistency between a

of contractual interpretation.  Third, we will examine the evidence presented by the parties as to contractual intent.

### A

In *Space Imaging Europe, Ltd. v. Space Imaging L.P.*, 38 F. Supp. 2d 326 (S.D.N.Y. 1999), the court outlined the proper analysis for a contract dispute under New York law. First, the court must decide whether the contract is ambiguous.  *Id.* at 333-34.  A contractual provision is ambiguous "whenever it admits of more than one interpretation 'when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in a particular trade or business.'" *Id.* at 334 (citations omitted). A contract is not considered ambiguous when the language has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Ibid.* (citations omitted).

If a court determines that language of a contract is ambiguous, external evidence of the parties' intent is admissible.  In assessing issues of contract construction, a court is "to give effect to the intent of the [contracting] parties as revealed by the language they chose to use." *Ibid.* (citations omitted).  Summary judgment is permissible when the language of the contractual provision at issue is unambiguous.  *Ibid.*  Summary judgment also is permissible when the contractual language is ambiguous "but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Ibid.* (citations omitted).

### B

The district court granted Filter's motion for summary judgment on the basis that Goodrich could not support its interpretation of Section 8.2(g) as requiring Filter to

---

#### 2

Goodrich's second argument is based on the district court's statement that "Goodrich hasn't carried its burden of proving their interpretation of the statement." Goodrich characterizes this case as relating to a dispute regarding contractual *intent*. The district court's statement and Filter's arguments on appeal characterize the case as a dispute regarding contractual *interpretation*.

Both Sixth Circuit and New York case law indicate that disputed issues of contractual intent are factual issues not to be resolved at summary judgment.  *See United States v. Cello-Foil Prods., Inc.*, 100 F.3d 1227, 1234 (6th Cir. 1996) (reversing summary judgment order and stating that "issues regarding parties' intent, with respect to agreements or contracts, present interpretative issues traditionally understood to be for the trier of fact"); *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 179 (6th Cir. 1996) (reversing summary judgment order); *In re Riconda*, 688 N.E.2d 248, 254 (N.Y. 1997) (cross-motions for summary judgment denied where "intent bearing on the contested provision" was at issue); *Superintendent of Ins. v. Harbour Assurance Co.*, 659 N.Y.S.2d 273, 275 (N.Y. App. Div. 1997) (cross-motions for summary judgment denied, and matter remanded for hearing, where trial court "should have accepted extrinsic evidence to determine the parties' intent").

Goodrich argues that it was improper for the district court to resolve the case at summary judgment because sufficient

---

is clear that there is nothing else to be offered by the parties and there is no prejudice in proceeding in this fashion." 10A WRIGHT ET AL., *supra*, § 2720. "[T]his procedure amounts to a trial of the action and technically is not a disposition by summary judgment." *Ibid.* The trial court in this case did not state that it was acting in such a manner, nor would it have been appropriate since it was clear that the parties believed that could have more to offer since they expressly stated in their Joint Statement of Undisputed Material Facts, that they were prepared to supplement the Joint Statement, if necessary, if the case proceeded to trial.

evidence was presented demonstrating the difference in the contractual intent of the parties. This court has held that when the "probative weight and effect" of testimony and documentary evidence concerning the intent of the parties is at issue, the case is "unsuitable for summary judgment." *Terry Barr Sales*, 96 F.3d at 181. Goodrich argues that, instead of declaring the case unsuited for summary judgment, the district court improperly weighed the evidence and made credibility determinations by ruling that Goodrich did not "carr[y] its burden" and that Goodrich's interpretation of Section 8.2(g) was "strained and tenuous." *See Ingram v. City of Columbus*, 185 F.3d 579, 586 (6th Cir. 1999) (reversing summary judgment order in favor of defendants in § 1983 suit and holding that where there is evidence favoring both sides "neither the district court nor this Court may make credibility determinations or weigh the evidence"); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) (reversing summary judgment order in favor of employer in employment discrimination action and stating, "The role of the judge at the summary judgment stage is not to weigh the evidence[.]").

Filter responds by arguing that genuine issues of material fact do not exist simply because opposing litigants argue for different interpretations of the same contractual provision. *See Tennessee Consol. Coal Co. v. United Mine Workers of Am.*, 416 F.2d 1192, 1199 (6th Cir. 1969) (difference in interpretation of contract terms by two parties does not render summary judgment inappropriate); *Aviation Dev. Co., PLC v. C&S Acquisition Corp.*, No. 97 Civ. 9302 (AJP), 1999 U.S. Dist. LEXIS 3627, at *26 (S.D.N.Y. Feb. 1, 1999) (assertion by one party that it interprets contract language differently does not create triable issue of fact).

The arguments presented by Goodrich and Filter are both correct and frame our task in analyzing this case on appeal. While Goodrich correctly notes that disputed issues of contractual *intent* have survived cross-motions for summary judgment on the basis that they are questions of fact, Filter

correctly points out that disputed issues of contractual *interpretation* can be resolved at summary judgment on the basis that they are questions of law. We must determine then, as we consider the merits of this case, whether the parties' dispute over Section 8.2(g) of the Agreement is an issue of contractual intent or an issue of contractual interpretation.

IV

The first basis upon which the district court rested its judgment for Filter was the parties' interpretation of Section 8.2(g) of the Agreement. Although the court stated that Section 8.2(g) is "unclear and ambiguous," the district court ruled that the issue was one of contractual interpretation, instead of intent, and that Filter should prevail because Goodrich could not support its interpretation of Section 8.2(g) as a matter of law. The court stated that, while Goodrich's interpretation of Section 8.2(g) is "plausible," the clause itself is "vague and unclear." The court determined that while Section 8.2(g) may be ambiguous when read on its own, it is not ambiguous when read in the context of the entire contract.

We disagree. The language of the Agreement is ambiguous as to the meaning of Section 8.2(g) both in the context of the section itself and the Agreement as a whole. As a result, it was improper for the district court to rule in favor of Filter as a matter of law on the basis that Goodrich could not support its interpretation of the Agreement. The contractual language supports both parties' arguments as to the interpretation of Section 8.2(g). Therefore, the trial court should have considered the intent of the parties, looking to extrinsic evidence as a means of assisting it in determining the parties' intent. Our review of the evidence presented indicates that there is a genuine issue of material fact as to what the parties intended by including Section 8.2(g) in the Agreement.

First, we will discuss the applicable New York law. Second, we will explain why it was improper for the district court to rule in favor of Filter as a matter of law on the basis