**Richard D. MANUEL, Plaintiff,**

v.

**CITY OF COLUMBUS,
et al., Defendants.**

**No. 00–CV–818.**

United States District Court,
S.D. Ohio,
Eastern Division.

May 6, 2002.

---

James Donald McNamara, Columbus, OH, for plaintiff.

Paula Jennings Lloyd, Columbus City Attorney's Office, Columbus, OH, for defendants.

## OPINION AND ORDER

MARBLEY, Ditrict Judge.

## I.  INTRODUCTION

This matter is before the Court on the parties' Cross–Motions for Summary Judgment, both filed on November 30, 2001.  The Court held a hearing on the motions on April 25, 2002.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

For the following reasons, the Court **DENIES** the Plaintiff's Motion for Summary Judgment, and **GRANTS** the Defendants' Motion for Summary Judgment.

## II.  FACTS

The Plaintiff, Richard Manuel, lives at 1558 S. Fourth Street, in the south end of Columbus, Ohio.  He claims that in or around 1997, he became aware of an increased presence in his neighborhood of a group of teenagers who used and sold crack cocaine.  In an effort to rid his neighborhood of this criminal activity, Mr. Manuel began reporting information about the alleged drug-related activities to the Columbus Police Department on a regular basis.  He claims that members of the police department who worked in his neighborhood, including the Defendants, were familiar with his reporting activities, and found him to be a credible informant.

On the evening of December 4, 1999, Mr. Manuel and his wife, Maria, were at home when Mr. Manuel noticed a crowd of approximately ten to fifteen teenagers gathering across the street from his house. Mr. Manuel claims that he called the police when he noticed that the group was not allowing cars to pass by the intersection near his house.  A police vehicle soon arrived at the intersection.  An officer in the vehicle spoke to one of the teenagers who appeared to be at the center of activity, and then left.

Mr. Manuel claims that shortly thereafter, some of the teenagers in the group began to throw beer bottles at cars driving by, so he called the police again.  He asserts that a short time later, members of the crowd began yelling toward his home, threatening to hurt him and to burn down his house.  As the teenagers began to engage in these activities, Mr. Manuel

called the police for a third time that evening.

Mr. Manuel alleges that after some time, members of the crowd began to come onto his property, and began to pound, kick, and throw bottles at his house. He claims that they continued to yell, and to threaten to kill Mr. Manuel and burn down his house. Mr. Manuel again called the police from his cell phone and reported that a group of males were in front of his house, verbally threatening him. Believing that the teens were engaging in this behavior in retaliation for his reporting activities, he requested that a squad car come to his home as quickly as possible.

Mr. Manuel claims that, at that point, having not yet received any police assistance but fearing for the safety of himself, his wife, and his home, he felt compelled to try to scare the teenagers away before they caused any harm. While still holding his cell phone, the police dispatcher still on the line, he got his pistol, which was unloaded. Holding his firearm in one hand and his cell phone in the other, Mr. Manuel stepped out onto his front porch and yelled at the crowd to "get the f* *k away" from his house, and indicated that he had already called the police. The crowd that had allegedly come onto the property quickly retreated to locations off of Mr. Manuel's property. Mr. Manuel claims that he held his gun down by his side the entire time that he was on his front porch.

Columbus Police Officer Anthony Roberts and Defendant Officer Jeremy Ehrenborg arrived soon thereafter. Although the parties dispute the precise course of events, the following facts can be discerned from the pleadings.

The officers spoke with the group of teenagers who were standing in front of a bus stop near Mr. Manuel's home. Among those present were Michael Chavis, Melissa New, Eric Burley, and Adrian Moore, all of whom the officers knew from their prior contacts with the police.[1] The officers separated the group of young people, and independently, Mr. Chavis, Ms. New, Mr. Moore, and Ms. Burley each informed the officers that they had been standing outside near the bus stop, "minding their own business," when the Plaintiff came out on his porch, raised his gun and pointed it at them, and told them to "get the f* *k away" from his house. They each stated that the Plaintiff ordered them away from his house despite the fact that they had not gone onto his property.

The police officers also spoke with Mr. Manuel. Officer Roberts asked Mr. Manuel what happened, and whether there were any witnesses. Mr. Manuel explained his version of what had happened, as set forth above. He also informed the officers that some of his neighbors and his wife may have seen what happened.

After speaking with Mr. Manuel and with the group of teenagers, the officers discerned that Mr. Manuel had come out on his porch holding his gun, and had yelled at the group to get away from his house, using profanity. Disputes remained, however, as to whether Mr. Manuel had acted in self-defense, and whether he had actually raised the gun and pointed it at the group of teenagers or kept it down by his side. In an effort to resolve these conflicts, Officer Roberts attempted to find an eyewitness who could corroborate Mr. Manuel's version of what had happened, but was unable to locate anyone who has seen precisely what had taken place. The officers also looked for physical evidence of damage to the Plaintiff's house (i.e. from the alleged kicking, pound-

---

**1.** All four individuals had previously been convicted or suspected of being involved in unrelated criminal activities, some of which involved violence and drug dealing.

ing, and throwing of bottles), but found none.

Recognizing that no one was able to corroborate Mr. Manuel's version of events, but that the stories of all four young people matched, Defendant Officer Ehrenborg concluded that Mr. Manuel had committed the crime of aggravated menacing. He handcuffed Mr. Manuel, and then placed him in the police cruiser. Officer Ehrenborg then radioed to the police department to request that a supervisor be sent to the scene to discuss the question of probable cause. Defendant Sergeant Andrew Beeler responded to the request. After explaining what they had been told by the teenagers and by Mr. Manuel, and what they had observed at the scene, Sergeant Beeler advised Officers Roberts and Ehrenborg that they had probable cause to arrest Mr. Manuel.

Officer Ehrenborg subsequently filed two counts of aggravated menacing against Mr. Manuel, listing Michael Chavis and Melissa New as the victims.[2] The statute that defines the crime of aggravated menacing states, in pertinent part:

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person....

(B) Whoever violates this section is guilty of aggravated menacing[,] ... a misdemeanor of the first degree....

OHIO REV.CODE § 2903.21.

On April 19, 2000, Mr. Manuel's charges of aggravated menacing came on for hearing. The case was resolved with a fifty-dollar bond forfeiture to an amended charge of disorderly conduct, a minor misdemeanor.

Based on the foregoing series of events, the Plaintiff filed a Complaint with the Franklin County Court of Common Pleas on June 21, 2000 against the City of Columbus, Officer Ehrenborg, and Sergeant Beeler. On July 24, 2000, the Defendants filed a Notice of Removal to this Court. On April 4, 2001, the Plaintiff filed an Amended Complaint. The Plaintiff alleges the following causes of action against the Defendants: (1) violations of 42 U.S.C. § 1983 based on the Defendants' infringement of the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution; (2) a violation of 42 U.S.C. § 1983 based on certain policies and customs of the City of Columbus that proximately caused the violation of the Plaintiff's Fourth Amendment rights; (3) malicious prosecution; and (4) false arrest and false imprisonment. This matter is now before the Court on the parties' cross-motions for summary judgment. The Plaintiff seeks summary judgment on the claim brought pursuant to 42 U.S.C. § 1983 for violation of his Fourth Amendment rights. The Defendants seek summary judgment on all of the claims brought against them.

## III. STANDARD OF REVIEW

In evaluating cross-motions for summary judgment, courts should " 'evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party.' " *Bakery & Confectionary Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio,* 133 F.3d 955, 958 (6th Cir.1998) (quoting *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir.1994)). Significantly, a case is not necessarily appropri-

---

**2.** Of the four youths whom Officer Ehrenborg believed to have been victims of Mr. Manuel's aggravated menacing, only Ms. New and Mr. Chavis were legal adults. Officer Ehrenborg advised the two juveniles that if they wanted to file charges or have charges filed on their behalf, they would have to do so with their parents.

ate for resolution at summary judgment simply because both parties have moved for summary judgment. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir.2001). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (citing *John v. State of La. (Bd. of Trustees for State Colleges & Univs.)*, 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed only by one party to the litigation. *Taft Broad.*, 929 F.2d at 248. Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). The nonmoving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). Furthermore, the mere existence of a scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

## IV. ANALYSIS

### A. Fourth Amendment

Both the Plaintiff and the Defendants seek summary judgment on the Plaintiff's allegation that the Defendants violated his rights under the Fourth Amendment to the United States Constitution by effectuating his arrest without probable cause.

■ The Plaintiff brings his Fourth Amendment claim pursuant to 42 U.S.C. § 1983. Section 1983 reads, in relevant part:

Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. To succeed on a claim for a violation of § 1983, the plaintiff must show that (1) a person (2) acting under color of law (3) deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights,* 265 F.3d 399, 405 (6th Cir.2001). Defendants Ehrenborg and Beeler do not contest the fact that they are people who were acting under color of law at the time of this incident. Therefore, the Court must determine whether the Defendants deprived the Plaintiff of his constitutional rights.

■ The Fourth Amendment provides, in relevant part:

The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause....

U.S. Const. amend. IV. An arrest that is not supported by probable cause violates the Fourth Amendment, and is actionable under 42 U.S.C. § 1983. *See Gardenhire v. Schubert,* 205 F.3d 303, 313 (6th Cir. 2000) (citing *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). " 'Probable cause' denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is

committing, or is about to commit an offense.' " *Painter v. Robertson,* 185 F.3d 557, 569 (6th Cir.1999) (citations omitted). The officer's belief of criminal activity must be supported by something more than mere suspicion, though less than *prima facie* proof. *United States v. Harris,* 255 F.3d 288, 292 (6th Cir.2001) (citation omitted).

■ Mr. Manuel argues that the Defendants did not have a reasonable basis for believing that he had committed a crime under the circumstances of this case. His argument hinges primarily on his assertion that it was unreasonable for the officers to believe the word of four "juvenile delinquents" over his own word, particularly in light of the fact that he was a known, reliable informant, and that he was the one who called the police for assistance. Mr. Manuel's argument regarding the relative credibility of the parties is based on his claim that, to have believed that they were arresting him on probable cause, the Defendants would have had to have rejected his claim that he was acting in self-defense. In rejecting his version of the events, Mr. Manuel claims that the officers improperly disregarded the exculpatory evidence which he had provided them (i.e. that the youths were on his property, threatening him). He contends that the officers were legally obligated to consider facts and circumstances relevant to his assertion of the affirmative defense of self-defense, which would have made his conduct lawful. In making this argument, he relies on *Painter,* wherein the Sixth Circuit stated that a probable cause inquiry must include all relevant facts and circumstances within the officer's knowledge, "*including* facts and circumstances establishing a statutorily legitimated affirmative justification for the suspected criminal act." *Painter,* 185 F.3d at 570 (citations omitted). In addition, Mr. Manuel argues that the officers neglected to speak with

potential eyewitnesses who could have corroborated his version of the facts.

Despite Mr. Manuel's extensive arguments regarding whether the version of the events as told by the four youths should have been believed over his version, the Court finds that the officers had probable cause to effectuate his arrest. First, the Court believes that the officers had a reasonable basis for rejecting Mr. Manuel's version of the events and accepting that of the four youths. To begin with, it is undisputed that the alleged victims individually reported that they had been standing in front of the Plaintiff's home when he came onto his porch, pointed a gun at them, and yelled at them, using profanity. The four individuals each claimed that he or she feared physical harm. Significantly, at the time of this incident, none of the youths appeared to be intoxicated or under the influence of narcotics, nor was any of them in possession of a weapon.[3] In addition, while the officers may have been familiar with the youths based on their prior criminal activities, they had no reason to believe that they were not telling the truth on this particular occasion.

Furthermore, the officers had a logical basis for rejecting Mr. Manuel's version of what had occurred. In particular, while Mr. Manuel claimed that he was merely acting in self-defense in response to the youths' attack on his home, the officers found no physical evidence of any damage or attempted damage to the home that would have resulted from such an attack. Additionally, while the four youths independently corroborated each other's stories, no one could corroborate Mr. Manuel's story. The officers attempted to locate eyewitnesses, but none of the neighbors with whom they spoke was able to corroborate Mr. Manuel's version of the events.[4]

Second, assuming that the officers had not explicitly accepted *either* version of the facts, they still would have had probable cause to arrest Mr. Manuel. Through their initial investigation into the incident, the officers discovered certain undisputed facts. Specifically, it was uncontroverted that Mr. Manuel went out onto his porch holding a gun, that he used profanity in yelling at the youths, and that upon his doing so, they retreated from where they had been standing. These facts alone, irrespective of whether Mr. Manuel actually pointed the gun at the youths, were sufficient to support a finding of probable cause for the Plaintiff's arrest for aggravated menacing. *See State v. Welling*, 2001 WL 1782878, at *3–4 (Ohio Ct.App. Feb 26, 2001) (upholding a jury's finding that the appellant was guilty of aggravated menacing based on an encounter with his companion's ex-boyfriend during which the appellant said nothing but removed a gun from his car, showed it to the victim (without directly pointing it at him), and then tucked it into his waistline in a way that was meant to intimidate the victim); *State v. Wilson*, 1999 WL 692424, at *3 (Ohio Ct.App. Sept.1, 1999) (finding that, while the testimony was insufficient to support charge of pointing a firearm, undisputed evidence that defendant had brandished a weapon while uttering threats of serious physical harm supported a conviction of aggravated menacing).

3. The officers conducted a pat down search of the youths before speaking with them and found no weapons.

4. While the Plaintiff makes much of the fact that the Defendants did not speak with his wife regarding what she saw, Mrs. Manuel testified at her deposition that she did not see her husband standing on the front porch with his gun, and that she did not hear anyone outside shouting that they were going to burn down the house.

The Court notes that the fact that Mr. Manuel's gun was not loaded is legally irrelevant to the finding of probable cause, as the ability to carry out a threat is not an element of aggravated menacing. *Dayton v. Dunnigan,* 103 Ohio App.3d 67, 658 N.E.2d 806, 808 (1995). Additionally, the fact that Mr. Manuel made only a conditional threat is also irrelevant to the finding of probable cause. Under Ohio law, a conditional threat (i.e. Mr. Manuel's implication that if the youths did not leave, then he would hurt them) can constitute a violation of menacing laws. *See State v. Collie,* 108 Ohio App.3d 580, 671 N.E.2d 338, 339–40 (1996) (citing cases in which conditional threats were found to constitute menacing).

■ The Court finds that the officers also had probable cause to arrest Mr. Manuel irrespective of his claim that he was merely acting in response to an attack on his home. *See Gardenhire,* 205 F.3d at 316 (citing *Criss v. City of Kent,* 867 F.2d 259 (6th Cir.1988), for the proposition that an officer is under no obligation to give credence to a suspect's exculpatory story). Mr. Manuel's argument that, in arresting him, the officers improperly rejected the exculpatory evidence which he had presented them is incorrect, and his reliance on *Painter* in making that argument is misplaced. In *Painter,* the Sixth Circuit recognized the well-established rule that officers must take into account all relevant facts and circumstances in making a probable cause determination. *Painter,* 185 F.3d at 570. The court did not hold, however, that officers must accept as true every claim of an affirmative defense, even when the alleged defense rests upon a disputed factual issue. The *Painter* court stated that "a peace officer, in assessing probable cause to effect an arrest, may not ignore information *known* to him which *proves* that the suspect is protected by an affirmative legal justification for his suspected criminal actions." *Painter,* 185 F.3d at 571 (emphasis added). If an investigating officer arrives on the scene of an alleged crime and is presented with conflicting sets of facts, one of which may implicate a suspect in a crime, the other of which may exonerate him, the officer has no definite *knowledge* of facts that *prove* the suspect's innocence. Such was the case here.

The rule that officers must consider all relevant facts and circumstances within their knowledge in making a probable cause determination does not undermine the Defendants' finding of probable cause. The only facts that the officers *knew* were the undisputed facts—that Mr. Manuel had gone out on his porch holding a gun, that he yelled at a group of youths using profane language, and that the youths retreated when he did so. These known facts supported the officers' conclusion that they had probable cause to arrest Mr. Manuel for aggravated menacing. In other words, unlike the officer in *Painter* who was denied qualified immunity after he ignored a known legal justification for the suspect's actions, the officers here did consider all of the facts before them, taking into account both the inculpatory and exculpatory evidence, and only then concluded that they had probable cause to make the arrest based on what they knew. Under *Painter,* the officers' actions were proper. Indeed, the officers were under no legal obligation to seek out potentially exculpatory evidence once they had probable cause to arrest Mr. Manuel based on the totality of the circumstances. *Gardenhire,* 205 F.3d at 316 ("Where there are sufficient facts to warrant a prudent person in a defendant's position to believe that a crime was committed and that the person charged committed it, the failure to make a further investigation does not negate probable cause.") (citation omitted).

In concluding that the officers had probable cause to arrest Mr. Manuel, the Court also relies on *Ahlers v. Schebil,* 188 F.3d 365 (6th Cir.1999). In *Ahlers,* a female prisoner accused a corrections officer of forcing her to perform oral sex on him in exchange for food. The prisoner repeated her allegations on three separate occasions, and her story remained consistent each time. *Id.* at 367. The state police officer who took control of the investigation took some steps to corroborate the prisoner's story, such as attempting to interview the suspected prison guard and speaking with the prisoner's cell mate, but also failed to take a number of investigatory steps, such as examining the scene, trying to locate an audio or video surveillance tape of the cell, or obtaining a sworn statement from the alleged victim. Based on the officer's investigation, the prison guard was arrested, but the charges against him were dismissed prior to a preliminary hearing. *Id.* at 368–69.

Under these circumstances, the Sixth Circuit found that the police had probable cause to arrest the corrections officer. *Id.* at 370. In so finding, the court noted that once the officers had established that probable cause existed, they were under no obligation to continue to investigate the allegations to discover possibly exculpatory evidence. *Id.* The court recognized that the alleged victim's report of what had occurred was entitled to a presumption of reliability and veracity, as are all eyewitness reports. *Id.* Specifically, the court stated that an eyewitness identification constitutes sufficient probable cause unless, at the time of the arrest, it is apparent that the eyewitness is lying, did not accurately describe what occurred, or was in some other way mistaken about the event. *Id.* (citations omitted). The court, therefore, concluded that the victim's accusation alone could have provided a sufficient basis for a finding of probable cause. *Id.* The court also noted that the fact that the alleged victim was a convicted prostitute who had a drug problem did not give the officers a reason to assume that she was dishonest. *Id.* at 371.

Here, like in *Ahlers,* the officers took some steps to determine whether the story of the alleged victims was true, though they may not have done absolutely everything that they could have. For example, they could have spoken to Mr. Manuel's wife before they arrested him (even though it was later discovered that she didn't have any information that would have been helpful to him). Under *Ahlers,* it appears that the officers could have properly concluded that they had probable cause to effectuate the arrest based solely on the reports of the youths. But those reports, in combination with the fact that no one could corroborate Mr. Manuel's version of what had occurred, and that there was no physical evidence to support his claim of self-defense, provide sufficient evidence for a reasonable officer to conclude that Mr. Manuel had, in fact, committed the crime of aggravated menacing.

Viewing the facts in the light most favorable to the Plaintiff, the Court finds that the Defendants had probable cause to effectuate Mr. Manuel's arrest. Therefore, the Court **DENIES** the Plaintiff's Motion for Summary Judgment, and **GRANTS** the Defendants' Motion for Summary Judgment on the Plaintiff's claim brought pursuant to 42 U.S.C. § 1983 for violation of his Fourth Amendment rights.

### B. City of Columbus' Customs and Policies

In his Complaint, the Plaintiff alleged that the acts of Defendants Ehrenborg and Beeler "were proximately caused by certain customs and policies of the Defendant City of Columbus, including but not limited to, failure to adequately supervise and dis-

cipline police officers regarding false arrests and unlawful seizures . . . ."

■ A municipality may be held liable for a violation of 42 U.S.C. § 1983 upon a showing by the plaintiff that his injury was caused by an unconstitutional policy, or custom that was maintained with deliberate indifference to the policy's or custom's consequences. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). To succeed on the claim, the plaintiff must demonstrate a direct causal link between the custom or policy and the constitutional deprivation by showing that the particular injury alleged was caused by the execution of the particular policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994); *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987) (stating that the plaintiff must identify the governmental entity's policy, connect the policy to the government entity, and show that the policy caused his injury). Indeed, the governmental entity must be the moving force behind the deprivation. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Significantly, the municipality may not be held liable under a theory of *respondeat superior* based on the actions of its employees, but may only be found liable for its own violations. *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ The Court finds that the Plaintiff's claim against the City of Columbus must fail. First, as discussed above in reference to the Plaintiff's claim against the individual officers, the Plaintiff has failed to allege a constitutional deprivation on these facts. Second, even if he had alleged a constitutional violation by the officers, the Plaintiff failed to identify any particular policy or custom of the City of Columbus that could

be deemed to be the moving force behind the violation.

Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment as to the Plaintiff's claim against the City of Columbus, brought pursuant to 42 U.S.C. § 1983.

### C. State Law Claims

■ It is well-established under Ohio law that a bond forfeiture in a criminal proceeding, as a compromise or settlement, is an absolute defense to actions for malicious prosecution, false arrest, or false imprisonment. *Neff v. Engle*, 28 Ohio App.3d 44, 501 N.E.2d 675, 676 (1986). Mr. Manuel's charge of aggravated menacing was resolved by a bond forfeiture to a reduced charge of disorderly conduct. Thus, based on the applicability of this rule of law to his case, Mr. Manuel has conceded that his state claims must fail.

Therefore, the Court **GRANTS** the Defendants' Motion for Summary Judgment as to the Plaintiff's state law claims of malicious prosecution, false arrest, and false imprisonment.

### D. Immunity

The Defendants have argued that they are entitled either to federal qualified immunity or state statutory immunity with respect to each of the Plaintiff's claims. It is unnecessary for the Court to address these arguments as the Court grants the Defendants' Motion for Summary Judgment based on the substantive law as it applies to the undisputed facts.

### V. CONCLUSION

Based on the foregoing analysis, the Court hereby **DENIES** the Plaintiff's Motion for Summary Judgment, and

GRANTS the Defendants' Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**