133 F.3d 955
 21 Employee Benefits Cas. 2354,
Pens. Plan Guide (CCH) P 23,940
BAKERY AND CONFECTIONERY UNION AND INDUSTRY INTERNATIONAL
HEALTH BENEFITS AND PENSION FUNDS and Chairman
Richard Hurt of the Funds' Board of
Trustees, Plaintiffs-Appellants,
v.
NEW BAKERY COMPANY OF OHIO, Defendant-Appellee.
 No. 96-4357.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 8, 1997.
Decided Jan. 16, 1998.
 
 Julia Penny Clark (argued and briefed), Alice Margaret O'Brien (briefed), Bredhoff & Kaiser, Washington, DC, Frederick G. Cloppert, Jr. (briefed), Cloppert, Portman, Sauter, Latanick & Foley, Columbus, OH, for Plaintiffs-Appellants.
 Jan E. Hensel (argued and briefed), Buckingham, Doolittle & Burroughs, Columbus, OH, for Defendant-Appellee.
 Before: KENNEDY, JONES, and CLAY, Circuit Judges.
 OPINION
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiffs, Bakery and Confectionery Union and Industry International Health Benefits and Pension Funds, and Chairman Hurt of the Funds' Board of Trustees, appeal from the District Court's order granting summary judgment, in part, to the defendant, New Bakery Company of Ohio, in this action to collect unpaid pension plan contributions under section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). In this appeal, we are asked to determine whether the applicable pension fund documents require New Bakery of Ohio to contribute to the fund on behalf of its part-time employees. Because we conclude that the pension fund documents require contribution, the judgment of the District Court is REVERSED and summary judgment is entered on behalf of the Pension Fund with respect to all unpaid contributions attributable to part-time employees.
 
 I.
 
 2
 Plaintiff, Bakery and Confectionery Union and Industry International Health Benefits and Pension Funds ("Pension Fund"), is a multiemployer[1] benefit fund in which the defendant, New Bakery Company of Ohio ("New Bakery"), has participated for several years in order to obtain pension benefits for its employees and health benefits for its retirees. Two documents govern the administration of the Pension Fund: the Agreement and Declaration of Trust and the Rules and Regulations of the Pension Fund. The Rules and Regulations of the Pension Fund require that employers execute a Standard Collective Bargaining Clause ("SCBC") in order to participate in the Pension Fund. The SCBC is a two-page form which sets forth the conditions under which an employer and local union will participate in the Pension Fund. All terms of the SCBC are uniform for all participants with the exception of the effective dates and the specific benefits that an employer and union will provide under the Fund. The SCBC is prepared by the Fund and signed by each employer participating in the Pension Fund, as well as by the local union; New Bakery and Local 57 of the Bakery, Confectionery and Tobacco Workers International Union, AFL-CIO ("Local 57"), the union representing the employees of New Bakery, signed SCBCs for the years 1990, 1991, 1992, and 1994.[2] The SCBC includes the following language pertinent to this appeal:
 
 STANDARD COLLECTIVE BARGAINING CLAUSE
 
 3
 It is hereby agreed to provide pension and retirement benefits as follows:
 
 
 4
 a. The Employer hereby agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust dated September 11, 1955, as amended, establishing the Bakery and Confectionery Union and Industry International Pension Fund (hereinafter called the Fund) and said Agreement is made part hereof by reference.
 
 
 5
 b. Commencing with the 1st day of ......, 19..., the Employer agrees to make payments to the Bakery and Confectionery Union and Industry International Pension Fund for each employee working in job classifications covered by the said Collective Bargaining Agreement as follows:
 
 
 6
 For each day or portion thereof, for which an employee, subject to the Collective Bargaining Agreement, receives pay, the Employer shall make a contribution of $...... to the above-named Pension Fund, but not more than $...... per week for any one employee.
 
 Delete
 Inapplicable
 Paragraph
 
 7
 For each hour or portion thereof, for which an employee, subject to the Collective Bargaining Agreement, receives pay, the Employer shall make a contribution of $...... to the above-named Pension Fund, up to a maximum of 40 hours in any week.
 
 
 8
 For the purpose of this Article, it is understood that contributions shall be payable on behalf of employees from the first day of employment, whether said employees are permanent, temporary, or seasonal, or full-time or part-time employees, and regardless of whether or not they are members of the Union ...
 
 
 9
 The SCBC further provides that "(g). This clause encompasses the sole and total agreement between the Employer and the Union with respect to pensions or retirement." According to the Pension Fund's Coordinator of Payroll Audits, Catherine Grimes, local unions and participating employers are notified that parties to the SCBC "must make contributions on behalf of part-time employees from the first day of employment so long as their position is included in the applicable bargaining unit." In addition, all contributing employers were informed via letter, addressing frequently misunderstood rules of the Pension Fund, that:
 
 
 10
 Contributions are due for part-time, temporary and seasonal employees, as well as for all employees working in job classifications covered by the Collective Bargaining Agreement, regardless of whether or not they are members of the union.
 
 
 11
 Also according to Catherine Grimes, participating employers and unions were informed that they could not make any modifications to the SCBC.
 
 
 12
 The other document which governs the administration of the Pension Fund, the Agreement and Declaration of Trust, provides that the "rate of contribution shall at all times by governed by the ... Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modifications thereto." On March 28, 1990, New Bakery and Local 57 signed a collective bargaining agreement ("CBA") for the period from April 1, 1990 to March 31, 1993.[3] That agreement specifically exempts part-time employees from the benefits and opportunities provided by the CBA and further states that:
 
 
 13
 It is hereby agreed and understood that this Agreement contains the entire agreement between the parties with respect to rates of pay, wages, hours, and other conditions of employment for all employees, both present and future, employed in the bargaining unit.... Changes in this Agreement, whether by additions, waivers, deletions, amendments, or modifications, must be by mutual agreement in writing.
 
 
 14
 For employees other than part-time employees, the CBA sets forth a contribution rate as follows:
 
 
 15
 The Company shall contribute twenty-eight (28) cents per hour of employment (thirty-five and one-half (35 1/2) cents effective April 1, 1991); forty-three (43) cents effective April 1, 1992, under the terms of the appropriate trust documents, for pension plan coverage for its full-time employees under the Bakery and Confectionery Worker's Union and Industry International Pension Fund ...
 
 
 16
 In 1994, pursuant to their authority under the Agreement and Declaration of Trust, the Pension Fund trustees ordered an audit of New Bakery's records from the time period of January, 1990 through February, 1994. The audit revealed that New Bakery had made no contributions on behalf of its part-time employees and had failed to make some contributions on behalf of full-time employees. In total, New Bakery failed to make $24,195.10 in contributions. The majority of this sum, $24,073.12, is attributable to New Bakery's failure to contribute on behalf of part-time employees.
 
 
 17
 On June 28, 1995, the Pension Fund filed the current action seeking to enforce New Bakery's obligations between January, 1990 and February, 1994 to make contributions to the Pension Fund on behalf of its full and part-time employees. The Pension Fund and New Bakery filed cross motions for summary judgment on all claims pending in the District Court. On October 17, 1996, the District Court issued an opinion and order that granted each party's motion for summary judgment in part. The court held that New Bakery was not obligated to make any contributions on behalf of its part-time employees but was obligated to make certain contributions on behalf of its full-time employees. The Pension Fund appeals from the District Court's order ruling that New Bakery was not obligated to make contributions on behalf of its part-time employees.
 
 II.
 
 18
 Our standard of review of a grant of summary judgment is de novo; we use the same test used by the district court. See Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Where the parties have filed cross-motions for summary judgment, we "evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party." Wiley v. United States, 20 F.3d 222, 224 (6th Cir.1994). Summary judgment is proper if the evidence " 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law.' " See Fed.R.Civ.P. 56(c); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988)(quoting Fed.R.Civ.P. 56(c)).
 
 III.
 
 19
 We begin our resolution of the question of whether New Bakery must contribute on behalf of its part-time employees by examining the statute which governs multiemployer pension plans. Section 515 of ERISA, 29 U.S.C. § 1145, provides:
 
 
 20
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 21
 29 U.S.C. § 1145. Congress enacted section 515 in order to permit multiemployer plans to "rely upon the terms of collective bargaining agreements and plans as written, thus 'permit[ting] trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law ...' " Central Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3rd Cir.1996)(quoting 126 Cong. Rec. 23,039 (1980)(remarks by Rep. Thompson)). Because, under section 515, multiemployer plans are entitled to rely on the literal terms of written commitments between the plan, the employer, and the union, the actual intent of and understandings between the contracting parties are immaterial. See Bakery and Confectionery Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir.1997); see also Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc., 870 F.2d 1148, 1149 (7th Cir.1989)(en banc ).[4] The fund thus stands much like a holder in due course in commercial law who is entitled to enforce the writing " 'without regard to understandings or defenses applicable to the original parties.' "[5] Central Pennsylvania, 85 F.3d at 1103 (quoting Central States, 870 F.2d at 1149). "By allowing multiemployer funds to enforce the literal terms of an employer's commitment, section 515 increases the reliability of their income streams, reduces the cost and delay associated with collection actions, and reduces or eliminates the cost of monitoring the formation of collective bargaining agreements." Bakery and Confectionery Union, 118 F.3d at 1021-22.
 
 
 22
 Section 515 thus directs us to examine the plan documents and the collective bargaining agreement to determine the scope of New Bakery's obligation to contribute to the Pension Fund. We must first address New Bakery's contention that the Standard Collective Bargaining Clause is neither a part of the collective bargaining agreement nor a supplement to it. We conclude that the collective bargaining agreement includes within it the SCBC. The collective bargaining agreement permits written supplements so long as the supplement is in writing and signed by both parties. Article 18, paragraph 1 of the CBA, provides as follows:
 
 
 23
 ... this Agreement incorporates their full and complete understanding, superseding and invalidating any previous commitments of any kind, oral or written, and all prior employee and Union rights and benefits are specifically incorporated herein. The parties further agree that no such oral understandings or practices will be recognized in the future unless committed to writing and signed by the parties as a supplement to this Agreement.
 
 Article 1, paragraph 3, further provides:
 
 24
 It is hereby agreed and understood that this agreement contains the entire agreement between the parties with respect to rates of pay, wages, hours, and other conditions of employment for all employees, both present and future, employed in the bargaining unit set forth above. Changes in this Agreement, whether by additions, waivers, deletions, amendments, or modifications, must be by mutual agreement in writing.
 
 
 25
 The SCBC is signed by both the employer and the union and the CBA dictates that New Bakery will contribute to the fund "under the terms of the appropriate trust documents." The Rules and Regulations of the Pension Fund, the "appropriate trust documents," require that employers execute the SCBC in order to participate in the Pension Fund. Section 2.01 of Article II of the Rules and Regulations states that an employer shall be accepted for participation in the fund "if the Employer and the Local Union enter into the Standard Collective Bargaining Clause adopted by the Trustees for participation in the International Pension Fund." Thus, New Bakery, in accordance with the terms of the trust documents, signed a written standard form which, by virtue of its recordation in writing and signature by both parties, became a clause of the collective bargaining agreement.
 
 
 26
 By concluding that the SCBC is part of the CBA, an internal conflict arises amongst the terms of the CBA. The SCBC declares that contributions must be made on behalf of part-time employees; whereas, Articles 4 and 13 of the CBA specifically exempt part-time employees from the benefits and opportunities provided by the CBA. We do not agree with the District Court's conclusion that the clause in the SCBC referring to part-time employees is ambiguous. The court below concluded that the phrase could mean either that contributions are required on behalf of part-time employees or simply that contributions must begin on the first day of employment regardless of whether the employees are permanent, temporary, seasonal, full-time or part-time. Thus, under the latter interpretation, contributions on behalf of parttime employees are not mandated, but if the employer and union had agreed to contributions on their behalf, the contributions must be begin on the first day of their employment.
 
 
 27
 Reading the totality of clauses (a) and (b) in conjunction with the other plan documents, however, we conclude that the first interpretation is the only sound interpretation. The Rules and Regulations of the Pension Fund reveal that the Fund provides pension benefits to part-time employees. Thus, a Standard Clause which requires employers to contribute on behalf of part-time employees would be consistent with the Fund's provision of benefits to part-time employees. Thus, our examination of the plan documents assists us in determining the scope of New Bakery's obligation to contribute to the pension fund; to permit the employer to avoid contribution would be incongruous with the plan documents.
 
 
 28
 Furthermore, in light of the purposes of section 515 of ERISA, we conclude that the Fund was entitled to rely on the express language of the SCBC. The SCBC states that "[t]his clause encompasses the sole and total agreement between the Employer and the Union with respect to pensions or retirement." We agree with the statement of the United States Court of Appeals for the Fourth Circuit in Bakery and Confectionery Union and Industry International Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir.1997):
 
 
 29
 By agreeing to this language, the Company unambiguously represented that it had not agreed with the Union on any other terms relating to pensions. By virtue of section 515, the Fund is permitted to rely on and enforce the literal meaning of the Company's representation. In other words, the Fund was entitled to assume that, as promised, the standard clause was the parties' complete agreement on pensions. The Fund was not required to comb through the other parts of the collective bargaining agreement searching for additional terms related to pensions. Instead, because the Fund was permitted to rely on the standard clause's representation of completeness, additional pension terms set forth outside the standard clause do not alter the Company's obligation to the Fund.
 
 
 30
 Id. at 1023-24. By allowing the Fund to rely on the integration language of the SCBC, we further the purposes supporting the enactment of section 515 of ERISA. The cost of administering the Fund is reduced by applying uniform rules to all employer participants and by relieving the Fund of the need to search, on its own or through counsel, numerous collective bargaining agreements for additional, different, or conflicting terms regarding pensions. See Bakery and Confectionery Union, 118 F.3d at 1024. Furthermore, the reliability of their income streams is increased by not requiring the Fund to bear the risk of losing contributions due to "overlooked or misinterpreted provisions that appear outside the standard clause and purport to alter the uniform standard of participation." Bakery and Confectionery Union, 118 F.3d at 1024.
 
 
 31
 The Pension Fund documents, section 515 of ERISA, and the principles supporting its enactment, therefore, compel us to conclude that the Pension Fund was entitled to rely on the language of the Standard Collective Bargaining Clause regarding contributions on behalf of part-time employees and the promise by New Bakery and the union that the SCBC constituted the "sole and total" agreement on pensions.
 
 IV.
 
 32
 For the reasons stated, the judgment of the District Court is REVERSED and summary judgment is entered on behalf of the Pension Fund with respect to all unpaid contributions attributable to part-time employees. The action is REMANDED to the District Court for a determination of the amount owed to the Pension Fund.
 
 
 
 [1]
 Approximately 1,100 employers currently participate in the Pension Fund on behalf of their employees
 
 
 [2]
 New Bakery and Local 57 did not sign a form for 1993 because the forms have no expiration date and the contribution rates did not change between 1992 and 1993
 
 
 [3]
 The parties entered into a second CBA in 1993 which covered the period from April 1, 1993 through March 31, 1997. In all relevant respects, the second CBA contained identical terms to those in the 1990-93 agreement
 
 
 [4]
 As explained by the Seventh Circuit, en banc:
 [Multiemployer] [p]lans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits. Multi-employer plans are defined-contribution in, defined-benefit out. Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize--perhaps because employers go broke, perhaps because they are deadbeats, perhaps because they have a defense to the formation of the contract. If some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised. Costs of tracking down reneging employers and litigation also come out of money available to pay benefits ... Litigation involving conversations between employers and local union officials--conversations to which plans are not privy--may be especially costly ...
 Id. at 1151.
 
 
 [5]
 We, thus, do not address evidence submitted by New Bakery evincing an agreement with the local union that New Bakery would not contribute on behalf of the part-time employees