Rhys WILLIAMS, a Minor, by his Mother and Next Friend, Gail ALLEN, et al., Plaintiffs,

v.

CAMBRIDGE BOARD OF EDUCATION, et al., Defendants.

No. 00 CV 388.

United States District Court, S.D. Ohio, Eastern Division.

Jan. 18, 2002.

James Donald McNamara, Columbus, OH, Mark Jurkovac, Columbus, OH, for Plaintiffs.

Richard Wayne Ross, Means, Bichimer, Burkholder & Baker, Columbus, OH, for Cambridge Board of Education, William Howell, Thomas Lodge.

Mark David Landes, John Sidney Higgins, Jr., Isaac Brant Ledman & Teetor, Columbus, OH, for Jeffrey Hayes, Jean Stevens.

Stephen Jesse Smith, Brian M Zets, Schottenstein Zox & Dunn, Columbus, OH for Brian Harbin, William LePage, City of Cambridge.

## OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Defendants' Motions for Summary Judgment and Plaintiffs' Cross–Motion for Partial Summary Judgment. Defendants, City of Cambridge, Captain William "Randy" LePage, and Detective Brian Harbin, filed their motions jointly,[1] as did Guern-

---

1. Defendant City of Cambridge has been vol- untarily dismissed by Plaintiffs Williams and

sey County Probation Officers Jeffrey Hayes and Jean Stevens, as well as Defendants Cambridge Board of Education, Vice–Principal William Howell, and former Superintendent, Thomas Lodge. A hearing was held on all of the motions on December 21, 2001. Jurisdiction is proper under 42 U.S.C. § 1983.

Based on the following analysis, the Court **GRANTS**, in their entirety, the Motions for Summary Judgment brought by each Defendant, and **DENIES** the Plaintiffs' Motion for Partial Summary Judgment.

## II. FACTS AND PROCEDURAL HISTORY

The Plaintiffs, Rhys Williams, a minor, by his mother and next friend, Gail Allen, Gail Allen individually, David Allen (Williams' step-father), Zachary Durbin, a minor, by his mother and next friend, Bobbi LaCross, and Bobbi LaCross individually (collectively, "the Plaintiffs"), filed this action on March 29, 2000, based on the following series of events.

According to the Plaintiffs, on April 21, 1999, one day after the shootings at Columbine High School in Littleton, Colorado, Zachary Durbin ("Durbin") and Rhys Williams ("Williams"), then students at the Cambridge Junior High School, spoke with Williams' mother, Gail Allen ("Allen"), about the Columbine tragedy. During the conversation, the boys allegedly asked Mrs. Allen numerous questions, including what she would do if they ever committed similar acts. The Plaintiffs assert that, although the boys discussed hypothetical scenarios, they never made any threats or plans to take any violent action.

Later that evening, Durbin recounted the conversation with Allen to his classmate, Kayla Hollins, during a telephone conversation. Durbin mentioned that he and Williams had asked Allen what she would do if they ever committed similar acts, and what they should do if a similar incident ever occurred at their school. The Plaintiffs allege that Durbin only mentioned Williams' name to put the conversation into context (i.e. to explain to Kayla that his earlier conversation was with Williams' mother).

On April 23, 1999, Kayla wrote a note during her first period class to her friend, Sadie LePage. In the note, she described her April 21, 1999 phone call with Durbin. Although the precise contents of the note were never determined, as the note was subsequently ripped in half and thrown away, it allegedly asserted that Durbin had made threatening statements regarding a plan to bring guns or a bomb to school. During her second period class, Sadie showed the note to her friend, Katie Spittle. During lunch, Katie attempted to show the note to Durbin, but Kayla pulled it out of his hands before he read it. In pulling the note away, Kayla tore the note in half, and subsequently threw her half away. In a written statement she provided later that day, Katie said that even though Durbin did not read the note, she asked him directly whether it was true that he threatened to bring a gun to school. He replied, "yes," saying he and Williams had discussed such a plan. He then allegedly pointed to Sadie, saying she would "go" first.

Later in the school day, Sadie and Katie decided to report the alleged threats to school officials. Along with Kayla, they provided Defendant Assistant Principal William Howell ("Howell") with brief written statements, in which they stated that Williams and Durbin had seriously discussed and threatened to bring guns or a

Allen, though not by Plaintiffs Durbin and LaCross. Defendants LePage and Harbin are

both officers of the City of Cambridge Police Department.

bomb to school. Specifically, Kayla wrote that she had spoken to Durbin on the phone two nights earlier, and that "he said he was sick of everybody, everyone was getting on his nerves and he and Rhys Williams were talking about bringing a gun to school and he was very serious about the matter." She stated that Durbin also said that "his other option was planting a bomb." Katie and Sadie both wrote that they asked Durbin directly whether it was true that he had made these statements to Kayla, and that he responded in the affirmative, saying that he and Williams had seriously discussed such a plan.

After speaking with the girls and reading their written statements, Howell contacted Defendant Captain LePage of the City of Cambridge Police Department.[2] Howell informed Captain LePage that Zachary Durbin and Rhys Williams had allegedly made threats of violence against the school and fellow students, including Captain LePage's daughter, Sadie. He allegedly told Captain LePage that Durbin and Williams made statements that included references to "killing all the preppies" and "bringing a bomb to school." Howell asserted that the claims against Durbin and Williams were made by reputable, reliable students.

At the time that these threats were allegedly made, Durbin was on juvenile probation for receiving stolen property. Williams was apparently not on juvenile probation at the time, but had been previously. Thus, after Howell repeatedly tried, to no avail, to contact Durbin's moth-er to ask her to come to the school, he instead contacted Probation Officer Jeffrey Hayes. Howell relayed to Officer Hayes the information that was contained in the written statements prepared by the three female students. Defendant Hayes subsequently contacted Defendant Jean Stevens, Chief Probation Officer of Guernsey County, to alert her to the alleged threats. Hayes allegedly reported to Stevens that an incident occurred at the Cambridge Junior High School involving a bomb threat made by Durbin and Williams, both of whom were, or had been, on probation. Hayes also told Stevens that statements were taken from three reputable, credible girls (although he never spoke with the girls directly), and that, based on those statements, the police intended to press charges. Based on what Hayes reported and recommended, and based on a conversation with a Cambridge police officer (whom the Plaintiffs presume to be Detective Brian Harbin, although Stevens could not remember the name of the officer), Stevens authorized Hayes to take Durbin and Williams into the custody of the juvenile probation department.

During the sixth period of the school day on April 23, 1999, Durbin was called out of class into the principal's office, where Hayes and a transportation officer from the probation department were waiting.[3] In the office, Howell told Durbin that three female students claimed that he and Williams had threatened to shoot fellow students and to blow up the school. Durbin denied having made such threats. Nonetheless, Hayes arrested him.[4] Dur-

---

2. Defendant Howell contends that he did not call Defendant LePage to initiate charges against Durbin and Williams. Rather, he asserts that he called LePage only to ask that he pick up his daughter from school, as she was visibly shaken and emotionally upset from learning that a fellow student had allegedly threatened to kill her.

3. Rhys Williams was absent from school on April 23, 1999.

4. The Plaintiffs characterized Hayes' action as *arresting* Durbin. Defendant Hayes, however, asserts that he merely took Durbin from school to the juvenile court offices to detain him pending arrest by the police.

bin was then transported from school to the probation department at the Guernsey County Courthouse. No one from either the school or the probation department made contact with Durbin's mother, Plaintiff Bobbi LaCross ("LaCross"), until after Durbin was removed from school and taken to the probation department.

Captain LePage and Detective Harbin arrived at the school at approximately 3:15 p.m. on April 23, 1999, after the school day had ended and the students had gone home. Because Captain LePage's daughter was a specific target of the threats allegedly made by Durbin and Williams, Captain LePage asked Detective Harbin to investigate the allegations. Detective Harbin collected the three statements made by Kayla, Katie, and Sadie, and arranged to meet them, along with Howell, later that day at the Cambridge Police Department to take formal, sworn statements from each. Other than taking those formal, sworn statements later on April 23, Detective Harbin took no more substantive action on his investigation until Monday, April 26, 1999.

After speaking with Howell, someone from the Guernsey County Probation Department contacted Allen, Williams' mother, and asked her to bring her son to the probation department, which she did.[5] At the probation department, both Durbin and Williams were shackled and transported to a juvenile detention facility in Jefferson County, where they were held until Monday, April 26, 1999.

On April 26, 1999, Durbin and Williams were returned to Guernsey County. When they returned, Detective Harbin Mirandized and interviewed Durbin in the presence of his mother, LaCross, and her boyfriend, Scott Snodgrass. He also Mirandized and interviewed Williams in the presence of his mother. Later that day, Durbin and Williams appeared in front of Judge Urbanowicz of the Guernsey County Juvenile Court. Detective Harbin did not attend the hearings; Captain LePage attended in his personal capacity, as a parent. Acting in his personal capacity, Captain LePage requested that Durbin be prevented from having contact with his daughter, Sadie.

At the close of the hearing in the juvenile court, both Durbin and Williams were placed under house arrest, and Durbin was placed on electronic monitoring. According to the Plaintiffs, both Durbin and Williams were also suspended from school for ten days. The school, however, did not issue written notices of the suspensions, nor did it hold a hearing on either of the suspensions. The school later denied a hearing on LaCross' appeal from her son's alleged suspension. Howell and Lodge contend that none of these procedural actions was taken because neither Durbin nor Williams was suspended as a result of this series of events. Rather, they assert that Allen decided voluntarily to keep her son, Williams, out of school for some period of time. As to Durbin, they assert that any school he missed resulted from his being under house arrest, not suspension. They maintain that when LaCross was initially given the notice of suspension, Howell qualified the notice, saying that Durbin would be suspended unless he was found not guilty. Thus, Durbin was not suspended because he was ultimately found not guilty of the charge brought against him.

Detective Harbin turned over the information he collected during the course of his investigation to Roy Morris ("Morris"), the Guernsey County Juvenile Prosecutor. During a brief conversation with Morris,

---

5. Stevens and Hayes assert that a Cambridge police officer picked up Williams, planning to charge him criminally. They claim that po-

lice officers contacted Stevens and asked if she had room to hold Williams in the juvenile detention center.

Harbin allegedly indicated his belief that there may be probable cause to charge Durbin, but that there was no probable cause to charge Williams with any crime. Morris ultimately charged Durbin with making menacing threats. Detective Harbin picked up the charge at the Guernsey County Prosecutor's Office, signed it, and filed it with the clerk's office. Durbin was subsequently acquitted of the charge against him. Williams was never charged with an offense in connection to the alleged threats.

Based on this series of events, the Plaintiffs filed a Complaint with this Court on March 29, 2000. The Complaint alleged claims against Defendants City of Cambridge, Captain William "Randy" LePage, Detective Brian Harbin, Guernsey County Probation Officers Jeffrey Hayes and Jean Stevens, the Cambridge Board of Education, Vice–Principal William Howell, and former Superintendent Thomas Lodge.

Specifically, the Complaint alleged claims of: (1) violations of 42 U.S.C. § 1983 through infringement of the Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and conspiracy to violate the Plaintiffs' constitutional rights; (2) violation of 42 U.S.C. § 1983 through the imposition by Defendant Cambridge Board of Education of a policy, practice, or custom that authorized or caused the deprivation of Plaintiffs' constitutional rights, and failure by the Cambridge Board of Education to train, supervise, and discipline school board employees adequately; (3) violation of 42 U.S.C. § 1983 through the imposition by Defendant City of Cambridge of a policy, practice, or custom that authorized or caused the deprivation of Plaintiffs' constitutional rights, and failure by the City of Cambridge to train, supervise, and discipline police officers adequately; (4) false arrest and false imprisonment; (5) malicious prosecution as to Plaintiff Durbin; (6) intentional infliction of emotional distress; and (7) defamation. Some time after the Complaint was filed, Plaintiffs Williams and Allen voluntarily dismissed the City of Cambridge as a defendant, but the City remains a defendant as to Plaintiffs Durbin and LaCross.

All of the Defendants have filed Motions for Summary Judgment, contending, in addition to their argument that the Plaintiffs' claims must fail on the merits, that they are entitled to qualified immunity and statutory immunity under Ohio law. In addition, Plaintiffs Williams, Gail Allen, and David Allen have filed a Motion for Partial Summary Judgment as to the constitutional claims against Defendants Stevens, Hayes, Harbin, and Howell.

## III. STANDARD OF REVIEW

In evaluating cross-motions for summary judgment, courts should " 'evaluate each motion on its own merits and view all facts and inferences in the light more favorable to the nonmoving party.' " *Bakery & Confectionary Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 958 (6th Cir.1998) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir.1994)). Significantly, a case is not necessarily appropriate for resolution at summary judgment simply because both parties have moved for summary judgment. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir.2001). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (citing *John v. State of La. (Bd. of Trustees for State Colleges & Univs.)*, 757 F.2d 698, 705 (5th Cir.1985)).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed only by one party to the litigation. *Taft Broad.*, 929 F.2d at 248. Summary judgment is therefore appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of

*Dayton*, 38 F.3d 282, 286 (6th Cir.1994). The nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir.1993). Furthermore, the mere existence of a scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

### A. 42 U.S.C. § 1983

Section 1983 reads, in relevant part:

Every person who, under color of any statute, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. In order to succeed on a claim for a violation of § 1983, the plaintiff must show that: (1) a person (2) acting under color of law (3) deprived him of his rights secured by the United States Constitution or its laws. *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir.2001). No Defendant contests the fact that he or she is a person who acts under color of law. Therefore, the only remaining issue on the Plaintiffs' § 1983 claim is whether the Defendants violated the Plaintiffs' rights secured by the United States Constitution.

### 1. Fourth Amendment

■ The Fourth Amendment provides, in relevant part:

The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .

U.S. CONST. amend IV. An arrest that is not supported by probable cause violates the Fourth Amendment, and is actionable under 42 U.S.C. § 1983. *See Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) (citing *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). " 'Probable cause' denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999) (citations omitted). The officer's belief of criminal activity must be supported by something more than mere suspicion, though less than *prima facie* proof. *United States v. Harris*, 255 F.3d 288, 292 (6th Cir.2001) (citation omitted).

■ Williams asserts that there was no probable cause for his detention. He contends that none of the three girls who made specific allegations regarding Durbin had made similar allegations regarding Williams. He also asserts that none of the Defendants, other than Howell, had any personal knowledge about the evidence against Williams at the time he was arrested and detained, and, therefore, they could not have arrested and detained him on probable cause. He maintains, in addition, that no Defendant took the necessary step of investigating the basis for any allegation against Williams before having him detained. Finally, Williams argues that the Defendants are liable for the alleged Fourth Amendment violation because they all knew that Williams was being arrested and detained without probable cause, but failed to intervene to prevent the constitutional violation. *See Bruner v. Dunaway*, 684 F.2d 422 (6th Cir.1982) (holding that an officer can be liable for his failure to intervene in the face of a known constitutional violation despite an opportunity to do so).

Durbin also argues that the Defendants lacked probable cause for his arrest and subsequent detention. He contends that the Defendants could not rely on the written statement of Kayla Hollins as a basis for finding probable cause, as no Defendant, other than Howell, actually read that statement before having Durbin detained. *See Wong Sun v. United States*, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (ruling that there could be no probable cause for an arrest where such cause is based upon the officer's reliance on vague information from a source of untested reliability).

Assuming that all of the Defendants did, in fact, arrest and detain Durbin and Williams,[6] the Court finds that the Defen-

---

6. Defendants LePage, Harbin, Howell, and Lodge assert, based on numerous issues of law and fact, that they neither arrested nor detained either Durbin or Williams. Defendants Stevens and Hayes also dispute the Plaintiffs' characterization of their actions as arresting Durbin and Williams, as they contend they merely agreed to hold the boys in a detention facility pending a hearing in juvenile court. The Plaintiffs contest, on various grounds, the Defendants' assertions that they had no part in the arrest and detention of Durbin and Williams. Because the Court concludes that all of the Defendants had probable cause to take action against Durbin and Williams, it is unnecessary for the Court to resolve whether, as a matter of law, the Defendants' actions effected an arrest or detention, thus invoking the strictures of the Fourth Amendment.

dants had probable cause to do so as a matter of law. The written statements that the three female students provided to Defendant Howell alleging that both Durbin and Williams had seriously discussed bringing guns or a bomb to school, the reported reliability of those three girls, and the context in which the threats were allegedly made (i.e. the day after the Columbine tragedy),[7] support a finding of probable cause. *See Cohen v. Dubuc*, No. 3:99–CV–2566, 2000 WL 1838351, at *4 (D.Conn. Nov.28, 2000) (finding that an officer had probable cause to arrest a high school student after three independent witnesses gave statements that, two days after the massacre at Columbine, they heard the student make threatening comments regarding "shooting up" his school). The information conveyed in the girls' written statements was sufficient for the Defendants to have had more than "mere suspicion" of Williams' and Durbin's alleged criminal activities. Additionally, the Court notes that, despite Williams' assertion to the contrary, Kayla's written statement, which was provided to school officials before either Williams or Durbin was detained, specifically named Williams as having discussed these plans with Durbin.

The Defendants, therefore, acted on the reasonable belief that Durbin and Williams had conspired to commit a violent crime against their fellow students, and that Durbin had violated Ohio's menacing statute. It is irrelevant that Durbin was later found innocent of the criminal charge against him and that Williams was never charged at all; neither of these facts can retroactively invalidate the probable cause that existed at the time of the arrests and detentions. *See Criss v. City of Kent*, 867 F.2d 259 (6th Cir.1988) (ruling that proba-ble cause supporting a valid arrest is not vitiated if the suspect is later acquitted). Therefore, the Court **GRANTS** summary judgment to the Defendants as to the Plaintiffs' Fourth Amendment claim.

### 2. Fourteenth Amendment

The Plaintiffs have brought a Fourteenth Amendment claim based on an alleged procedural due process violation by Defendants Cambridge Board of Education, Howell, and Lodge (collectively, "the School District Defendants"). The Court notes that because they were unsure as to what type of Fourteenth Amendment claim was being asserted by the Plaintiffs against whom, Defendants LePage and Harbin moved for summary judgment as to this claim. Durbin responded to their arguments simply by stating that LePage and Harbin played a significant role in his arrest and detention, and that there remain genuine issues of material fact as to whether they violated his rights under the Fourteenth Amendment. To the extent that the Plaintiffs are attempting to pursue Fourteenth Amendment claims against Defendants other than the School District Defendants, the Court finds that the Plaintiffs have failed to set forth specific facts that are sufficient to defeat the Defendants' Motions for Summary Judgment, and, therefore, **GRANTS** the Motions of the remaining Defendants as to the Plaintiffs' Fourteenth Amendment claim.

■ Before a student can be suspended and thereby temporarily deprived of his property interest in his education, he must be given notice of the charge against him, an explanation of the evidence, and an opportunity to respond if he denies that the allegations are true. *See Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42

---

**7.** The Court takes judicial notice of the difficult position in which the Defendants found themselves in the wake of the tragedy at Columbine. As the Defendants point out, au-thorities in Littleton were recently sued for *not* having taken action under similar circumstances.

L.Ed.2d 725 (1975) (holding that such procedures are required by the Fourteenth Amendment); *Paredes by Koppenhoefer v. Curtis*, 864 F.2d 426, 428 (6th Cir.1988). While the parties here agree that the Plaintiffs never received either notice or a hearing for their alleged suspensions, the Defendants claim the lack of notice and hearing was based on the fact that there were no suspensions, thus no specific procedures were necessary. The Plaintiffs, on the other hand, allege that Durbin and Williams were suspended, and the lack of notice and a hearing was a violation of their due process rights.

As to Williams, the Defendants assert that Williams missed school not because he was suspended, but because Allen decided voluntarily to keep her son out of school for some period of time following this series of events. As to Durbin, the Defendants contend that he missed school only because the juvenile court imposed house arrest following the detention hearing on April 26, 1999, not because he was suspended by the school. They point out that when LaCross was given preliminary notice of Durbin's suspension, the school officials indicated that the suspension would not be ordered if Durbin was ultimately found not guilty of the charge brought against him. Thus, as Durbin was acquitted of making menacing threats, the suspension was not issued. They also note that Durbin had the opportunity to make up any school work he missed during his absence, and that he moved up to the ninth grade at the end of the school year.

Although the Plaintiffs allege that Durbin and Williams were, in fact, suspended as a result of this series of events, they have presented no evidence to support their allegations. Their only evidence in this regard is that Durbin and Williams remained at home for some period of time following their detentions at the Jefferson County juvenile detention facility. The

Plaintiffs have presented no evidence showing that either student attempted to attend school but was turned away. Even if the Court were to disregard the explanations set forth by the Defendants, it is simply insufficient for the Plaintiffs to make a bare allegation that they were suspended, particularly in light of the undisputed fact that Durbin and Williams were placed on house arrest by the juvenile court. Because the Plaintiffs have failed to present more than a mere scintilla of evidence that they were actually suspended from school, thereby necessitating certain procedures, the Court **GRANTS** the School District Defendants' Motion for Summary Judgment as to the Plaintiffs' Fourteenth Amendment claim.

### 3. Conspiracy

An action for civil conspiracy may be brought under 42 U.S.C. § 1983 when parties conspire to deprive the plaintiff of his federal statutory or constitutional rights. *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (allowing such a claim to proceed beyond the summary judge stage). A civil conspiracy is an agreement by two or more persons to injure another by unlawful action. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir.1985). To sustain a § 1983 conspiracy claim, the plaintiff must show: (1) that there was a single plan; (2) that the alleged co-conspirator shared in the general conspiratorial objective; and (3) that an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiff. *Id.* at 944. These claims "must be pled with some degree of specificity [since] vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987) (citing *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984), in which the conspiracy claim was dis-

missed because the complaint lacked the factual allegations necessary to support a conspiracy theory).

Williams, in his Motion for Partial Summary Judgment, contends that the actions of Defendants Harbin, Howell, Hayes, and Stevens, constitute a conspiracy in violation of 42 U.S.C. § 1983. He states that these Defendants directly participated in causing Williams to be illegally arrested and detained. He asserts that Defendants Harbin, Howell, Hayes, and Stevens accomplished the allegedly illegal result (i.e. Williams' arrest and detention) collectively, after discussion among themselves, and in reliance upon each other's statements. Therefore, he asserts that he is entitled to summary judgment on his claim of civil conspiracy against these four Defendants. Plaintiff Durbin echoes the arguments of Plaintiff Williams in every respect, but adds that Defendant LePage was also involved in this alleged conspiracy.

■ The Court finds that the Plaintiffs have failed to set forth specific facts sufficient to support their allegation that the Defendants were engaged in a conspiracy to deprive the Plaintiffs of their constitutional rights. As a threshold consideration, since a conspiracy is an agreement to injure another by unlawful action, the Plaintiffs cannot show that the Defendants engaged in a conspiracy, in light of the Court's finding that the Defendants acted lawfully, on probable cause. *See Collyer v. Darling*, 98 F.3d 211, 229–31 (6th Cir.1996) (upholding the district court's grant of summary judgment to the defendants on the plaintiff's claim of civil conspiracy to violate his First Amendment rights when the plaintiff could not prove that the defendants violated his First Amendment rights).

Moreover, the Plaintiffs' allegations fail to meet the standard for a conspiracy under § 1983. First, while the Defendants may have relied on the actions and statements of one another to bring about the detention of Durbin and Williams, the Plaintiffs have presented no evidence of a specific, single plan to detain the Plaintiffs in contravention of their constitutional rights. Second, the Plaintiffs' mere assertion that the Defendants relied on each others' representations to detain Durbin and Williams is insufficient to show that the Defendants shared in a general conspiratorial objective. Third, the Plaintiffs have failed to show that an overt act was committed in furtherance of a conspiracy that caused injury to the Plaintiffs. The Court presumes that the "overt act" on which the Plaintiffs rely to support their claim is the taking custody of Durbin and Williams, which was the first affirmative act, beyond the Defendants' discussions with one another, that ultimately led to the Plaintiffs' detention. That overt act, however, was not "in furtherance of the conspiracy," because, as this Court has already said, the Defendants did not act in furtherance of an illegal objective, but acted legally based upon probable cause. Hence, because the Defendants acted in furtherance of a legal objective, the overt act did not cause a constitutional injury to the Plaintiffs.

Since the Plaintiffs' conspiracy claim is based on conclusory allegations, unsupported by material facts, the Court **GRANTS** summary judgment in favor of all of the Defendants on the Plaintiffs' claim of civil conspiracy, and **DENIES** Williams' Motion for Partial Summary Judgment on this claim.

### B. False Arrest and False Imprisonment

■ False arrest and false imprisonment are related causes of action. *Tucker v. Kroger Co.*, 133 Ohio App.3d 140, 726 N.E.2d 1111, 1115 (1999) (citation omitted). A claim for false arrest requires a showing that the plaintiff was detained without law-

ful justification. *Id.; Harvey v. Horn*, 33 Ohio App.3d 24, 514 N.E.2d 452, 454 (1986) (ruling that a plaintiff claiming false arrest need only show that he was detained and that the detention was unlawful). A claim for false imprisonment requires a showing that the defendant intentionally confined the plaintiff within a limited area for an appreciable time, both without lawful privilege and without the plaintiff's consent. *Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St.3d 107, 573 N.E.2d 633, 636 (1991) (citation omitted).

 Assuming that all of the Defendants caused Williams' and Durbin's confinement in the juvenile detention center,[8] the Court finds that the Plaintiffs have failed to set forth facts that are necessary to satisfy an essential element of their claims of false arrest and false imprisonment. Specifically, while the Plaintiffs can show that Durbin and Williams were deprived of their liberty for some period of time, they cannot prove that they were deprived of their liberty without lawful justification. The Court believes that the Defendants had probable cause, and, therefore, lawful privilege and justification, to detain and confine both Durbin and Williams. *See* discussion *supra* Part IV. A.1 (regarding the Plaintiffs' Fourth Amendment claim); *see also* Ohio R. Juv. Proc. 7(A)(1)(b) (stating that a child taken into custody may be placed in detention prior to the final disposition of his case if such detention is necessary to protect the person or property of others from immediate or threatened physical or emotional harm). The Court also recognizes that Durbin and Williams were detained only until a timely hearing was granted on the next day the court was open after they were taken into custody. *See* Ohio R. Juv. Proc. 7(F)(1) (providing that a detention hearing must be held not later than seventy-hours after a child is placed in a detention facility, or the next court day, whichever is earlier). Therefore, because the Plaintiffs cannot prove that the detention of Durbin and Williams was without lawful privilege and justification, the Court **GRANTS** the Defendants' Motions for Summary Judgment as to the Plaintiffs claims for false arrest and false imprisonment.

## C. Malicious Prosecution

 Durbin contends that Defendant Harbin is liable for malicious prosecution based on Durbin's having been prosecuted for making menacing threats. To prevail on this claim in Ohio, a plaintiff must show: (1) malice in instituting or continuing a prosecution against the plaintiff by the defendant; (2) lack of probable cause for prosecuting; and (3) termination of the prosecution in the plaintiff's favor. *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732, 736 (1990). In the context of a malicious prosecution claim, probable cause, the lack of which is the crux of the action, is defined as "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Huber v. O'Neill*, 66 Ohio St.2d 28, 419 N.E.2d 10, 11–12 (1981) (quoting *Ash v. Marlow*, 20 Ohio 119 (1851)).

---

8. Defendants LePage and Harbin, along with the School District Defendants, assert that they did not detain or confine Durbin and Williams, and, therefore, cannot be liable on these claims. The Plaintiffs contest the assertion of Defendants LePage and Harbin, but have failed to respond to the arguments set forth by the School District Defendants with respect to this claim. Because the Court concludes that Durbin and Williams were detained and confined on probable cause, it is unnecessary to resolve this factual dispute.

Although Durbin can clearly show that the prosecution against him was terminated in his favor, as he was ultimately found not guilty of making menacing threats, the Court finds that Durbin would not be able to prove the other two essential elements of his claim of malicious prosecution at trial. First, assuming that Harbin, in fact, instituted proceedings against Durbin by presenting information to Prosecutor Morris and then signing and filing the charge, Durbin has failed to set forth evidence from which a reasonable trier of fact could conclude that Harbin acted with malice in so doing. Second, Durbin has also failed to present evidence tending to show that Harbin lacked probable cause for instituting the prosecution. Under Ohio's menacing statute, no person shall "knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person . . . ." *See* OHIO REV. CODE § 2903.22. Based on the written and sworn statements of the three female students regarding Kayla Hollins' telephone conversation with Durbin, and their face-to-face conversation with Durbin during lunch on April 23, it was reasonable for Harbin to conclude that Durbin had knowingly caused Sadie LePage to believe that Durbin would cause her physical harm. Thus, Harbin had a reasonable, articulable suspicion that Durbin was guilty of menacing. The fact that Durbin may have never actually made the threatening statements of which he was accused is irrelevant to the Court's determination that, as a matter of law, Harbin had probable cause to believe that he did. Therefore, the Court **GRANTS** the Defendant's Motion for Summary Judgment on the claim of malicious prosecution.

### D. Remaining Claims

In addition to the above claims, the Plaintiffs' Complaint also asserted claims of: (1) violations of 42 U.S.C. § 1983 through infringement of the Plaintiffs' First Amendment rights; (2) violations of 42 U.S.C. § 1983 by the City of Cambridge and the Cambridge City School District through adoption of a policy, practice, or custom that caused the Plaintiffs' alleged constitutional injuries; (3) malicious prosecution as against Defendants other than Harbin; (4) intentional infliction of emotional distress; and (5) defamation. The Defendants moved for summary judgment as to each of these claims, and the Plaintiffs failed to respond to the Defendants arguments, either in their pleadings or at oral argument. The Plaintiffs have also failed to set forth more than a mere scintilla of evidence from which key elements of these claims might be adduced. Therefore, as the Plaintiffs seem to have conceded that these claims are without merit, the Court **GRANTS** the Defendants' Motions for Summary Judgment with respect to each of these claims.

### E. Immunity

The Defendants have argued that they are entitled either to federal qualified immunity or state statutory immunity with respect to each of the Plaintiffs' claims. It is unnecessary for the Court to address these arguments as the Court is granting the Defendants' Motions for Summary Judgment based on the substantive law as it applies to the undisputed facts.

### V. CONCLUSION

Based on the foregoing analysis, the Court hereby **GRANTS** the Motions for Summary Judgment brought by every Defendant in their entirety. The Court hereby **DENIES** the Plaintiffs' Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**